HesdersoN, Chief-Justice.
 

 Tlie trustees claim the land in question, as an escheat upon the death of
 
 Catha-rine Saslin
 
 without
 
 heirs;
 
 and they insist, that the certificate of naturalization, which
 
 Mrs. Ilaslin
 
 has obtained, does not prove, that she has been naturalized’ under the law of the United States. To me that question appears immaterial. If she was an alien, and so continued until her death, she was capable of acquiring by purchase, and holding real estate against- ail but the sovereign ; and even against the sovereign, until her estate was divested by an office found, establishing the fact of
 
 *192
 
 her alienage, or by some sovereign act declaring that fact, as by an act of the legislature, or hy seizing these lands, (in the same capacity,) as forfeited by it; and perhaps by other means. But is clear, that the sovereign cannot seize these lands, and upon the trial of an action for them prove the alienage by parol, or other evidence
 
 in pais,
 
 as is attempted to be done in this case. As well might the state bring an action for the lands of a citizen, alleging that he had forfeited them for felony, and on the trial prove
 
 by "witnesses,
 
 that he had committed murder, and thereby forfeited his estate — whereas it is the well established law, that a felony can be proven by a record of his attainder only, which is an office found establishing thé fact. But there is another, and equally strong ground, to resist such an attempt.
 
 Mrs. Haslin
 
 is now
 
 dead;
 
 and the law has cast the estate upon her heirs, if she has any, and their estate cannot be divested by an office now found, establishing her alienage, or proving the fact in any other manner. For suppose she had left a child born within the United States. Can there be a doubt, that it would have succeeded to these lands as her heir. In fact, the plaintiffs claim this estate because she left no heirs at her death. Without that being- the case, there can be no escheat, as it is out of the question to claim the land as forfeited by reason of her alienage, both for want of an inquest of office, and from the fact that she died seised. I say they affirm, that she died without heirs, as an escheat arises only on the death of the tenant without an heir, or what is the same
 
 thing,
 
 an heir qualified to take. But in this case the lessors of the •plaintiff go further, and affirm, that she was qualified to take and hold lands according to the laws of the state ; for to such, and such only was
 
 Kean,
 
 by the power in the .deed from
 
 Blount
 
 to him, authorized to convey. And al- •. though there is nothing like an estoppel in this case, as .the lessors of the plaintiff were not parties nor privies to .the deed, nor .parties to the suit, in which it was decreed, ■that
 
 Kean's
 
 heirs should convey to
 
 Mrs. Haslin,
 
 yet they .affirm both these facts, by claiming these lands as an es-clieatfor want of heirs to
 
 Mrs. Haslin.
 
 For as was said he-
 
 *193
 
 fore, the estate
 
 did not pass to her,
 
 if she was incapable of receiving it under the power in
 
 Blount’s
 
 deed. And therefore it remains in
 
 Kean.
 
 It would he the same
 

 
 *192
 
 The sovereign cannot seize lands, and prove the alienage
 
 in pais
 
 upon the trial of an ejectment. It can be proved only by an office found. So in cases of forfeiture for felony, the record of the attainder of the tenant must be produced.
 

 The native born child of an alien succeeds asheir, where the estate of the ancestor has not been divested by an office found in his life time. An office found after -his death does not affect the estate of the heir.
 

 
 *193
 
 The law will ^ cast a» es-who cannot hold d s and for dus quest of office is not necessary to prevent an alien from succeeding1 t0 an estate'
 

 ' CourtB cannot judicially notice countries are question must3 be determined by the executive,
 

 thing In a deed not made under a power. For if there is no grantee capable of receiving a thing attempted to be granted, it remains where it was. But ivhere
 
 the heirs
 
 come to claim as heirs, if they are aliens, there needs no office found to ascertain that fact. They must
 
 show
 
 their capacity to take and hold. The
 
 want
 
 of it need not be shown : for the
 
 laxo
 
 will not cast an estate on him, who cannot hold it against all, even against the sovereign,
 

 This brings before us the construction and effect of the treaty with the States General of the United Netherlands, made in the year 1782. I need not state the various revolutions -and changes, which that government lias undergone, and its present form ; nor attempt to support by reasoning, why treaties arc, or ought to be binding upon the people of the same countries, although both or one of the governments have undergone revolutions or changes. This does not belong to this department of the government. We can know our exterior relations only through that branch or organ of the government, appointed by the form of it, to represent and act for us with foreign powers. The case states, that that organ or department of the government still considers the treaty as binding on us ; and of course on the people of the other , .. . contracting party.
 

 The next question is the effect of that treaty on the case. By the sixth article it is provided, that the subjects of either party may dispose of their
 
 effects
 
 by testament, donation or otherwise; and their
 
 heirs,
 
 subjects of one of the parties, shall receive such successions
 
 ah in-testato,
 
 even though they have not received letters of naturalization. And if the
 
 heirs
 
 to whom such succession falls shall be minors, their guardian or curator may govern, direct and alienate the
 
 effects
 
 fallen to such minors by
 
 inheritance.
 
 If this case rested on the meaning to be given to the word
 
 effects,
 
 even without a context, I should think, being found where it is, in a treaty between powers having no common technical terms, in fact not a
 
 *194
 
 common language, that it included things immovable as wejj as m0Vablc. in the first place, the instru-1 ment is to receive an extended and liberal construction; not ijiie the contract of individuals, where nothing is presumed to be granted, but what falls plainly within the words of the grant. But in this case, unless the meaning of the word be extended to tilings immovable, nothing at all is granted by the word
 
 effects.
 
 For by our law, alienage is no objection to the acquisition of movables in any way, either by purchase, or succession
 
 ab intestate.
 
 And so I presumo it is in the States General. If not, to obtain it by pretending to grant something in lieu of it, when in fact nothing was granted. is a trick which I would not, even in argument, impute to our negotiator. But taken with the context, I think there cannot be a doubt. ■ The words
 
 succession ab
 
 intestalo, are. a well known term of the civil law ; a law, on which the laws of continental Europe, may be said to he based.
 
 By
 
 that law, it includes successsion to immovable as well as movable estates. And to use terms, which by this almost universal law, would give to our citizens the right to succeed to immovable estates, and deny it to them by any restricted sense, to which we might coniine the terms, is not presumed to have been the intent of either party. I say to give to our citizens, because if the civil law prevails in the Netherlands, and I presume it does, it would do so. But why negotiate in the terms of the laws of the Netherlands, and not in the terms of our laws? The answer is, our laws are peculiar to us,, and the English — the civil law, common to all continental Europe. But there are terms in the context, which even in our law, would give to this word
 
 effects
 
 an immovable character. In 'the civil law, he who succeeds to the estate of a dead man, either movable or immovable, is called heir. By our law, the term is confined to him who succeeds to his immovable, or rather real estate. By the civil law, inheritances embrace movable as well as immovable estates. By our law, the term is confined to immovable estates ; at least, it does not embrace what we call chattels. But in the treaty, both the word
 
 heirs
 
 
 *195
 
 and the word
 
 inheritances
 
 are used. How shall they be
 
 understood;
 
 according to our laws or theirs ? If by our laws, and goods only are to he included, we shall hare in our legal phraseology, new to be sure,
 
 heirs claiming money and other personal goods, descending from their ancestor as their inheritance.
 
 It is Arery plain, I think, that it was intended to embrace all kinds of property by the
 
 treaty;
 
 and therefore tjie lands in question are embraced by it. Effects descending by inheritance must include land.
 

 The case further states, that after the said
 
 Catharine Haslin
 
 had appointed that the heirs of
 
 Kean
 
 should convey the lands in question to her, she removed to France, and devised to
 
 Mine. Caroline Louisa,
 
 with some trifling exceptions,
 
 all
 
 that she possessed or should
 
 possess at her' death.
 
 That after the making of the will, the heirs of
 
 Kean
 
 conveyed to
 
 Mrs. Haslin
 
 the legal estate in the lands in question
 
 ;
 
 and that
 
 .Mrs. Haslin
 
 afterwards died. That
 
 Sane’Caroline Louisa
 
 was born within the dominion •of the United Netherlands. That
 
 Mrs. Muslin,
 
 in France, where they both resided, adopted her as her daughter and heir according to the laws of France. That the said
 
 Mine Caroline
 
 married, and was domiciled in France. That she died after
 
 Mrs. Haslin,
 
 leaving two children, born in France, who are still alive. That .Mrs.
 
 Haslin
 
 left surviving her an only sister residing at the Hague, born in the United Netherlands, and a citizen thereof.
 

 An intricate question, intended to be presented, docs not arise for two reasons, which I will presently give. The question is, whether a child of a Netherlander, who was born in France, is within the protection either of the French treaty, or the Dutch treaty ; or both combined ; and if either, which. For
 
 Mine Caroline Louisa,
 
 the adopted daughter and devisee of
 
 Mrs. Haslin,
 
 was a Netherlander, married and domiciled in France, where she had two children and died. This question is not pre- • ini»
 
 Qvia
 
 -i/i jO/iaio/o ti /i
 
 T/inaort
 
 /1i/l iia! ■fair a 'fli aca
 
 *196
 
 c(] the ]cgal estate from the heirs of
 
 Kean.
 
 If the estate had remained as it was at the date of the will, that is, a right in
 
 Mrs. Haslin
 
 to call for it, it would have passed, that is, a right to call for it would have passed to the devisee. The estate being changed at
 
 Mrs. Haslin's
 
 death, neither passed; not the first, for it was extinguished by the deed ; not the last, because it was not in
 
 Mrs. Haslin,
 
 when she made the will. If such reasons as these satisfy the makers of the law, it is not for me to complain. It would disgrace those . who are emphatically called lawgivers. But the law is so written, and I cannot alter it. The other reason is, that the plaintiffs are not interested in the question ; nor were they in the other. For if the French children of
 
 Jlnne Caroline
 
 do not take, the Dutch heirs will. For an alien child does not exclude a more remote heir. It it is the
 
 jieir
 
 w}10 can ant| not
 
 he who cannot take,
 
 which excludes 1 . vT[ _ _ . . _ another heir. When I say
 
 can,
 
 I mean who once could. w^)0 once could have taken, but loses his-capacity by a
 
 personal
 
 disqualification does exclude
 
 others;
 
 as an at-tainted son excludes a brother : oran elder attainted son excludes a younger son. But not so with those who never col,p] take. It is therefore unnecessary to. consider this or any other question, as to who is the heir of'
 
 ^rs' Haslin.
 
 For the plaintiffs have no interest in them, If she had
 
 any
 
 heir, it excludes them. As
 
 it
 
 appears,
 
 that Mrs. Haslin
 
 left a sister, a subject of the States General, and as by the treaty, tbe sister is heir, to .her, if no other is found,
 
 Mrs. Haslin
 
 is not dead without heirs capable of succeeding to her estate in these lands. There is therefore no escheat, and the plaintiffs are not entitled to recover.
 

 If th 1 ' b unable to take by reason °f any disqualification, which is not per-alienagef btíielHS next in’degree succeeds, topre-vent an escheat. But where the disability is per-soiicilj fis by fin attainder, the cannot.1 succeed^ but the estate will escheat.
 

 Although our lexicographers, and Dr.
 
 Johnson
 
 at their head, give to the word
 
 effects
 
 the meaning of things mow; able, yet one of the instances, which he adduces to show that the word is used according to his exposition, proves, I think, the contrary.
 

 “
 
 SMUE-lsss«tbe.
 
 eff- cts
 
 for which I did the murder,
 

 “
 
 My
 
 crowr,
 
 my own ambition, and my queen.”
 

 By the word
 
 crown
 
 the speaker meant not the crown or cap, which encircled his brow, but the realm over which
 
 *197
 
 lie reigned. However this may be, by the words of the treaty
 
 Vie effects
 
 are the
 
 inheritances
 
 which are to descend to the
 
 heir.
 
 This gives to the word a meaning, which cannot be misunderstood.
 

 Lord.
 
 Coke,
 
 in treating of the capacity of grantees, says that
 
 prima facie
 
 all can take and hold estates ; but some can take, and cannot hold ; some can take and hold until the estate is
 
 divested;
 
 and some cannot either take dr hold. Of those who can take and cannot hold is an at-tainted person. He takes, but
 
 instanter
 
 the estate is in the king. An alien can take and hold until office found. In both these cases, the estate passes out of the grantor, and becomes vested in some
 
 one;
 
 while a monster, not having human shape, can neither take nor hold ; and is not recognized as a human being. The grant might as well be to a horse, or any of the brute creation. In such case, the estate never passes from the grantor. It remains where it was. . So it is 1 believe with a person professed, who is dead in law. He may make his executor, and his estate descends on his heirs. But' why argue this point ? The plaintiffs themselves affirm it. For if
 
 Mrs. Easlin
 
 did not take, the estate is still in
 
 Kean’s
 
 heirs. If so, they have no shadow of right. If
 
 Mrs. Easlin
 
 took the lands, they descended to her heirs, whether pointed out by the common or statute law, or by treaty. The only effect the treaty has, or was intended to have in such case,, was to do away the objection of .alienage ; not to prescribe to us, who should be the heirs. If a Dutch subject was to die now, own-ning lands in this state, those who are his heirs under our act of 1808 would succeed ; not those who would have succeeded by the common law in 1782, when the treaty was made; nor those who are his heirs by the Dutch law. These observations are made in opposition to the claim of
 
 Anne Caroline,
 
 the adopted daughter, and heir by the laws of France. But this question, as has been said before, is immaterial to the plaintiffs. For
 
 any
 
 heir will exclude them
 
 ;
 
 and the adverse claims of the others are not now in litigation.
 

 Per Curiam. — -Judgment reversed.