## IN RE SPRIGGS' ESTATE.

SPRIGGS ET AL., RESPONDENTS, v. SPRIGGS, APPELLANT.

(No. 5,446.)

(Submitted February 16, 1924. Decided April 16, 1924.)

[225 Pac. 617.]

*Wills—Construction—"Effects" Held to Include Real Property.*

Wills—Disposition of Entire Estate—Presumption.

1. When one makes a will, the natural and reasonable presumption is that he intends to dispose of his entire estate, and every word in it must be given effect, if possible.

Same—Construction.

2. In the construction of a will that construction is to be adopted, if possible, which will prevent a partial intestacy.

Same—"Effects"—Term Broad Enough to Include Real Property.

3. A will, made preparatory to taking a degree in a secret society by a man of more than ordinary ability who had held high state office and otherwise had enjoyed extensive business experience, reading: "I hereby give, devise and bequeath all my goods, chattels and *effects* to my wife," *held* to pass all of his property, both real and personal, the word "effects," though generally including only personal property, being broad enough to compass real estate. (MR. JUSTICE STARK dissenting.)

*Appeal from District Court, Lewis and Clark County; A. J. Horsky, Judge.*

PROCEEDING in which Josephine L. Spriggs, widow, petitioned for final distribution to her of estate of Archibald Everett Spriggs, deceased, in which Jabez and Isabella Spriggs, testator's parents, filed objections. From the decree rendered in favor of objectors, petitioner appeals. Remanded, with directions.

*Messrs. Stewart & Brown,* for Appellant, submitted an original and a supplemental brief; *Mr. S. V. Stewart* argued the cause orally.

*Mr. Jos. R. Wine,* for Respondents, submitted a brief and one in reply to that of Appellant and argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

In the month of February, 1918, Archibald Everett Spriggs executed a will in this language:

"In the Name of God, Amen: I, Archibald Everett Spriggs, being of sound mind and memory, but knowing the uncertainty of human life, do now make and publish this my last will and testament, that is to say: First, I hereby give, devise and bequeath all of my goods, chattels and effects to my duly wedded wife, Josephine Spriggs and I hereby nominate my said wife executrix to serve without the giving of bonds of any kind. This is my only will up to this date. Archibald Everett Spriggs." An' attestation clause with date of the will followed.

Mr. Spriggs had been married to Josephine, his wife mentioned in the will, for seven years. No children were born of the union. Jabez and Isabella Spriggs, Mr. Spriggs' father and mother, were then living in Kansas upon their farm. In former years Mr. Spriggs had been generous to his parents but after his marriage he did not support them because he "felt they were comfortable." When the petition for distribution was heard the parents were bedridden and ill. They were then living with their son, Harvey Spriggs, a wealthy farmer. The testator died July 18, 1921. At the time of his death his estate consisted of cash, Liberty Bonds, promissory notes, shares of stock in mining and oil companies, and real estate consisting of a ranch in Broadwater county, lots' in Townsend, and some mining claims.

In due time the will was admitted. to probate. Letters testamentary were issued to Josephine L. Spriggs, the widow. Thereafter a proceeding designed to construe the will found its way to this court. (*In re Spriggs' Estate,* 68 Mont. 92, 216 Pac. 1108.) That proceeding having been dismissed pursuant to this court's direction, the executrix filed her petition for final distribution of the estate, in which she asked to have the entire property distributed to her. Thereupon Mr. Spriggs'

father and mother filed their objections to the petition, claiming that under the will the testator disposed of his personal property only and consequently the title to the real estate passed by succession one-half to the widow and the other half to themselves in accordance with the statutes of this state. After a hearing the court entered its decree distributing all of the personal property and one-half of the real estate to Josephine L. Spriggs and the other one-half of the real estate to the parents. From this decree Josephine L. Spriggs as widow, executrix, and as devisee and beneficiary under the will, has appealed.

By the terms employed in the will did the testator manifest his intention to dispose of his personal property only?

By the provisions of section 7016, Revised Codes of 1921, a will is to be construed according to the intention of the testator. Where his intention cannot have effect to its full extent, it must have effect as far as possible. The next section (7017) says: "In cases of uncertainty arising upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, exclusive of his oral declarations."

The words of a will are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be collected and that other can be ascertained. (Sec. 7023.) The words are to receive an interpretation which will give to their expressions some effect, rather than one which will render any of the expressions inoperative. (Sec. 7024.)

If the testator had said, "I hereby give, devise and bequeath all of my goods," or "all of my goods and chattels," then his intention to dispose of his personal property only would be manifest. Why did he add the word "effects"? If he intended to dispose of his personal property only, that word did not add anything to "goods, chattels." Is the word then mere surplusage? If he had said, "I hereby give, devise and bequeath everything to my wife," there would be no doubt about

it; and if he had said, "I hereby give, devise and bequeath
all my effects," it would seem clear that he intended to leave
everything to his wife.

It is a well-known canon of construction that every word in a
[1] will should be given effect if possible; this the statute rec-
ognizes. When one makes a will, the natural and reasonable
presumption is that he intends to dispose of his entire estate.
(24 R. C. L. 227.) The rule is thus stated in *Gourley* v. *Thomp-
son*, 2 Sneed (Tenn.), 387: "The law presumes that a man
who undertakes to make a will does not intend to die intestate
as to any of his property. The courts have always, in con-
formity to this principle, construed wills so as to embrace all
the testator's property, if the words used, by any fair inter-
pretation, or allowable implication, will embrace it."

Another rule declared by the unanimous voice of the courts—
[2] at least we have not seen any decision to the contrary—
is that in the construction of a will that interpretation is to be
adopted if possible which will prevent a partial intestacy. (24
R. C. L. 228, and cases cited.) "Constructions which lead to
intestacy, total or partial, are not favored; and, therefore,
such an interpretation should, if reasonably possible, be placed
upon the provisions of the will as will prevent that result."
(Mr. Justice Van Fleet in *Le Breton* v. *Cook*, 107 Cal. 410,
40 Pac. 552.)

Here we note section 7025, Revised Codes of 1921, which
provides: "Of two modes of interpreting a will, that is to be
preferred which will prevent a total intestacy." By this
declaration may it be inferred upon the doctrine that the ex-
pression of one thing is the exclusion of the other, that while
the law looks with disfavor upon a construction which will
prevent total intestacy, it does not look with any disfavor upon
a construction which will result in a partial intestacy? A nega-
tive answer is compelled. The section first appeared in Field's
Code. The citation given by Mr. Field thereunder is *Booth*
v. *Booth*, 4 Ves. Ch. Rep. 407. But we find on that page this

language: "Every intendment is to be made against holding a man to die intestate who sits down to dispose of the residue of his property," and nothing in the decision to the contrary. California adopted the section in 1872 (Civ. Code, sec. 1326); Montana in 1877. We took the section from California. Yet the California courts have followed the rule announced in *Le Breton* v. *Cook, supra,* without deviation, sometimes citing the statute. (*Toland* v. *Toland,* 123 Cal. 140, 55 Pac. 681; *Estate of Young,* 123 Cal. 337, 55 Pac. 1011; *O'Connor* v. *Murphy,* 147 Cal. 148, 81 Pac. 406; *Estate of Heberle,* 153 Cal. 275, 95 Pac. 41; *Estate of Henderson,* 161 Cal. 353, 119 Pac. 496; *Estate of Gregory,* 12 Cal. App. 309, 107 Pac. 566.)

How is the conclusion reached that the testator intended [3] partial intestacy? Simply by construing the word "effects" to be equivalent to "goods" and "chattels."

It clarifies the situation somewhat to give its local color. At the time the will was made Mr. Spriggs, with some others, twenty or more, were taking degrees in a secret society in the city of Helena. According to the rules of the society, before proceeding in a certain degree it was necessary for them to make wills. For this purpose the candidates were seated about a large table. It was explained to them by the gentleman in whose charge they were that the requirement was of a serious nature. He said the wills they were about to make would be valid and, unless revoked, in case of death would be entitled to probate. Mr. Spriggs was a man of more than ordinary ability, "an able, capable man, possessed of a clear mind"; he had been Lieutenant Governor of Montana and had had an extensive business experience. Being assured that the requirement was serious, which at first he was inclined to doubt, he proceeded to write out the will. It is plain enough that the conditions surrounding the making of this will were not ideal for the execution of a document of so much importance, one usually attended with feelings of gravity and solemnity. The situation did not afford that deliberation which is ordinarily con-

[70 Mont. 272.]

sidered necessary when one is engaged upon a transaction of unusual importance, which making a will is.

What do these conditions tell us, if anything, respecting the testator's intention? He was not in duty bound to mention his parents. To be sure, they were his heirs at law, entitled to inherit in the absence of a will. But they do not stand in the position of a child not mentioned. Are we to presume that he forgot the existence of his parents? Or, that he did not intend to recognize them? A reasonable answer is that it is not to be deemed probable that a man of Mr. Spriggs' mental equipment forgot the existence of his father and mother, nor that he purposed to leave his real estate undisposed of. If he used the words "goods, chattels and effects" designedly to dispose of his personal property only, then by design he left the disposition of his real property in such a state of uncertainty by the language used that as a reasonable man he must have foreseen the probability of family strife over it. He must have known that whether he intended to dispose of the real estate would be a subject of controversy which might result in a lawsuit between his widow and his parents. If he did this designedly we must attribute to him the subtlety of that old serpent the Bible tells us about. We think, the circumstances and language of the will considered, he did not intend any such result.

The question arises whether any special signficance is to be given the word "devise." Properly used the term is restricted to real property. (Black's Law Dictionary.) Corpus Juris says: "In legal parlance it has a well-defined meaning, usually employed to denote a gift, by a person's last will and testament, of real estate or an interest therein." (18 C. J. 1033.) However it must be conceded that from the use of the word alone it is not to be assumed that the testator had his real estate in mind, for the word is used often synonymously with "bequeath" in disposing of personal property only (Schouler on Wills, sec. 513); but when all the words

of the will are taken together certainly the implication is warranted that real as well as personal property was in contemplation.

It is true that the word "effects," as generally employed by the lexicographers, includes only personal estate, goods, movables and chattel property, and such undoubtedly is its technical meaning; but we find the following in Webster's International Dictionary, defining "effects": "Goods; movables; personal estate; as: The people escaped from the town with their effects; sometimes used to embrace real as well as personal property." The Century Dictionary defining the word, says: "Goods; movables; personal estate. In law (a) property; whatever can be turned into money; (b) personal property."

If Governor Spriggs, a layman, had read the foregoing definitions he might have thought the word "effects" sufficient to embrace his real estate. Or, if he had read what Corpus Juris says he might have deemed that word sufficient for his purpose: "The word is a very general term, and is used to denote whatever a man has that can effect, produce, or bring forth money by sale. In its broadest sense it is defined to be property or worldly substance; whatever can be termed of value. As thus used it denotes property in a more extensive sense than goods. Indeed the word may be used to embrace every kind of property, real and personal, including things in action, land, tenements, *etc.*, and everything which is subject to the laws of property and ownership, whether real or personal, including things in action, land, tenements," *etc.* (19 C. J. 1017.) In support of the text the following cases with others are cited: *Adams* v. *Akerlund,* 168 Ill. 632, 48 N. E. 454; *Ruckle* v. *Grafflin,* 86 Md. 627, 39 Atl. 624; *Horton* v. *Garrison,* 1 Tex. Civ. App. 31, 20 S. W. 773; *In re Stixrud's Estate,* 58 Wash. 339, Ann. Cas. 1912A, 850, 33 L. R. A. (n. s.) 632, 109 Pac. 343. And see *Andrews* v. *Applegate,* 223 Ill. 535, 7 Ann. Cas. 126, 12 L. R. A. (n. s.) 661, 79 N. E. 176; 1 Alexander on Wills, 34.

[70 Mont. 272.]

The latest case we have found bearing on the subject is *Coffman's Admr.* v. *Coffman*, 131 Va. 456, 109 S. E. 454. In that case the testator gave to his wife his entire interest in a farm which they two owned in common, and certain personal property, for life. He then gave a legacy to each of two nieces to be paid after his wife's death, and concluded: "The remainder of my effects I leave with my wife to dispose of as she thinks proper." He left no children. After the testator's death his sisters and brothers, his heirs at law, claimed he had died intestate as to certain of his real estate and personal property, and the trial court so decided. The supreme court of appeals said: "But it is said, and the lower court expressly so held, that the word 'effects' does not embrace real estate. We do not take this view of the case. The general rule is that effects means personal property, but that depends on the context, the subject matter and the circumstances." After some discussion the court concluded that phase of the case by saying: "We have no doubt that the testator, by the general and sweeping residuary clause, intended to give the widow everything he had, except the one thousand dollars given to her nieces; and this, we think, under the circumstances, may fairly be said to be the meaning of the words used by him."

So here we are constrained to think that the testator, situated as he was, took the simplest phrase that came into his mind to give everything to his wife. To be sure he might have used fewer words, free from any possible ambiguity. And he might by words have given one-half of his real estate to his parents if he had any such intention. All things considered, from the words of the will itself, we are not in doubt. We hold the testator intended to make a will disposing of all he had; that he did not intend to die partially intestate; that he intended his wife to be his sole legatee and devisee.

The judgment is reversed and the cause remanded. The district court is directed to enter a decree distributing the

-real estate as well as the personal property of the estate to Josephine L. Spriggs, the widow.

*Remanded, with directions.*

Associate Justices Cooper, Holloway and Galen concur.

MR. JUSTICE STARK, dissenting: If I could bring myself to agree with the conclusion adopted by the majority of the court in the foregoing opinion, I have encountered but one judicial expression in which I could voice my approval, and that is contained in the special concurring opinion of Berry, L. J., in *Jackson* v. *Hosie*, 27 L. R. Ir. 450, wherein the learned jurist said: "I am adverse to making wills for people and as a general rule I think it is much better they should make their wills for themselves. However, in the present case, as I believe we are making the testator a far better will than he made for himself, I heartily concur." Indeed, I would go further than the Irish jurist did, and say that I think we have made not only a better will than the testator made for himself, but also the will which he ought to have made.

I am unable to join in the construction given to the will in question by the majority opinion, and shall state the reasons for my dissent as briefly as the case will permit.

As stated in the majority opinion, this matter was before the court on a former appeal (68 Mont. 92, 216 Pac. 1108), in which the will had been construed by Judge W. H. Poorman who had held that it made disposition of personal property only, but the cause was reversed for the reason that the procedure taken had not conferred jurisdiction upon the court to construe the will. When the matter went back to the district court, the proper procedural method was invoked and the case was heard before Judge A. J. Horsky, who construed the will the same as Judge Poorman had; that is, he held that by its terms it only passed title to the personal property and left the real estate to descend to the heirs of the deceased under

the law of succession, and this appeal is prosecuted from the decree entered in accordance with this determination.

The only question presented for decision is: Did the testator by the words which he employed in his will manifest an intention to dispose of his real estate?

At the hearing in the district court certain oral testimony was introduced in an effort to aid the court in its determination by showing the circumstances under which the will was executed. From this testimony it appeared that the testator was a man of wide and varied business experience, far above the average in ability and attainment; that his parents were old and infirm, one being blind and the other bedridden; that in years gone by he had assisted them so as to make them comfortable, and that in recent years he had contributed nothing to their support; that they were possessed of some estate, the extent and value of which were not known; that the personal property which had been or would be distributed to the widow under the will, after all debts and the expenses of administration had been paid, was of the value of $22,831.94, and that the appraised value of the real estate was $14,550. Confessedly this testimony is of very little value to the court in solving the problem presented. True it is that certain oral declarations alleged to have been made by the testator at the time he signed the will and subsequent thereto were admitted, over objection, which, if they could be used, might be of assistance; but we are precluded from considering them by the express provisions of section 7017, Revised Codes of 1921. The diligence of counsel, as evidenced by their elaborate and carefully prepared briefs, has failed to furnish us with any case where a will of like or similar wording has been construed, and a somewhat extended independent research has failed to disclose any. Almost innumerable cases involving the construction of wills are found in the books, but, after all is said, they lead back to the cardinal rule of testamentary construction which is crystallized

in section 7016, Revised Codes of 1921, that "a will is to be construed according to the intention of the testator."

As was said by Chief Justice Marshall in the early case of *Smith* v. *Bell,* 6 Pet. 68, 8 L. Ed. 322: "The first and great rule in the exposition of wills, to which all other rules must bend, is, that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law."

In determining the intent of the testator we are limited to a consideration of the will as we find it. It is the intention which the testator expressed in the words of the will itself which controls. The court cannot make a will to conform to what it may think the testator intended by indulging in conjecture or probabilities as to what his intentions were, but which he failed to express. (*In re Walkerly's Estate,* 108 Cal. 627, 49 Am. St. Rep. 97, 41 Pac. 772; *In re Wilson's Estate,* 184 Cal. 63, 193 Pac. 581; *In re Sowash's Estate,* 62 Cal. App. 512, 217 Pac. 123; *In re McKay's Estate,* 42 Cal. App. 361, 183 Pac. 574.) In the case of *Hunter* v. *Miller,* 109 Neb. 219, 190 N. W. 583, the court declared that it is the intention which the testator expresses in his will, either by its terms or by necessary implication, that controls, and not merely what the testator may have had in his mind nor what the court may believe he would have done had he completed what appears to have been an incomplete disposition of his property.

In construing a will the object is to ascertain not the intention of the testator simply, but the intention which the will itself either expresses or by necessary implication declares. (*In re Trevor's Will,* 120 Misc. Rep. 22, 197 N. Y. Supp. 719.)

In construing a will it is not the province of the court to consider what the testator possibly intended, but only what intention was expressed in the language used in the will. (*In re Joyce's Estate,* 273 Pa. 404, 117 Atl. 90.)

With the foregoing observations in mind we pass to a consideration of the wording of the will. First, as to the property disposed of: The words, "goods" and "chattels" as defined by

the lexicographers and as ordinarily used, have reference only to personal property. The main contention of counsel for appellant, and which is adopted in the majority opinion, is that the word "effects" as used in this will is broad enough to carry real estate. This word in its primary and ordinary meaning includes only personal estate, goods, movables and chattel property. It denotes property in a more extensive sense than "goods," and includes all kinds of personal property, such as shares of capital stock, etc. (*Bank* v. *Byram,* 131 Ill. 92, 22 N. E. 842.) There does not appear to be any variation in the judicial definitions holding that this word standing alone in a will or other written instrument, unaided by reference to other words or terms contained therein, is restricted in its meaning to personal property only. An illustrative case is that of *Andrews* v. *Applegate,* 223 Ill. 535, 7 Ann. Cas. 126, 12 L. R. A. (n. s.) 661, 79 N. E. 176, wherein the will disposed of two tracts of land by description and then disposed of all personal property, money and "effects" of every description, and it was held that "effects" so used did not cover the testator's homestead, which was otherwise not disposed of.

In support of its conclusion that the word "effects" as used in the will under consideration was broad enough to include both real and personal property, the opinion cites a number of cases to which attention is now directed:

In *In re Stixrud's Estate,* 58 Wash. 339, Ann. Cas. 1912A, 850, 33 L. R. A. (n. s.) 632, 109 Pac. 343, it was held that the expression "goods and effects" as used in the treaty between the United States and Sweden, was broad enough to include both real and personal property. In arriving at this conclusion the court relied upon the reasoning of the supreme court of Illinois in *Adams* v. *Akerlund,* 168 Ill. 632, 48 N. E. 454. The opinion in this latter case is very able and is particularly enlightening upon the matter which we are considering. The court calls attention to the fact that the treaty, as it appears

in volume I of the United States Statutes at Large, is printed
in both the French and English languages, and says: "Article
VI of the treaty of 1783, as revived by the treaty of 1827,
contains the following words: 'The subjects of the contracting
parties in the respective states, may freely dispose of their goods
and effects either by testament, donation or otherwise, in favor
of such persons as they think proper; and their *heirs* in what-
ever place they shall reside, shall receive the succession even
*ab intestato,* either in person or by their attorney, without
having occasion to take out letters of naturalization. These
*inheritances,* as well as the capitals and effects, which the sub-
jects of the two parties, in changing their dwelling, shall be
desirous of removing from the place of their abode, shall be
exempted from all duty called *"droit de detraction,"* on the
part of the government of the two states respectively.' " It
then points out that the French words appearing in the French
copies of the treaty which correspond to the English words
"goods and effects" are *"fonds et biens,"* and shows that in
the French law the term *"biens"* includes all kinds of prop-
erty, both real and personal. The court, however, did not rest
its opinion upon the above proposition, but proceeded to a
consideration of the meaning of "effects" as used in connec-
tion with the other words of the Article, and says: "It cannot
be doubted, that, in certain connections, the word 'effects' some-
times refers to both real and personal property. It is true
that, as a general thing, the word 'effects,' when used in connec-
tion with the word 'goods,' means personal property, and not
real property." And further on, adverting to the general
rules of construction and interpretation applied in determining
the meaning of the word in wills and written instruments gen-
erally, continues: "In interpreting wills, it is well settled that
the word 'effects' will be construed as including land, where
it can be collected from other parts of the will that such was
the testator's intention. In other words, where the context
of a will shows, that it was the intention of the testator to dis-

pose of his realty, the courts have held that the word 'effects' is sufficient to include the real estate.''

The opinion then enters into a detailed discussion of the expressions: '' 'Their *heirs,* in whatever place they shall reside, shall receive the *succession* even *ab intestato,*' *etc.;* and 'these *inheritances* * * * shall be exempted from all duty,' '' *etc.* and says: ''The words, 'heirs,' 'succession,' and 'inheritances,' as here used, are very significant words in determining the meaning to be given to the word 'effects.' '' Following this it was shown that these words refer to the descent of both real and personal property. In consideration of these circumstances the court concludes that branch of the discussion by saying: ''It is evident, therefore, that the terms of the treaty were intended to include real estate as well as personalty, and that the word 'effects' was intended to have the broader meaning which includes both land and personalty.''

In *University* v. *Miller,* 14 N. C. 188, cited in *Adams* v. *Akerlund, supra,* the supreme court of North Carolina construed provisions of the treaty between the United States and the Netherlands similar to those in the treaty under consideration in the *Akerlund Case,* and held that the meaning of the word ''effects'' as used therein in connection with the words ''heirs,'' ''inheritances,'' and ''succession'' was broad enough to include real as well as personal property.

In *Ruckle* v. *Grafflin,* 86 Md. 627, 39 Atl. 624, the will contained numerous specific devises of both real and personal property, and the testatrix disposed of the remainder of her ''effects'' in a general residuary clause. The court in considering the whole of the will said: ''It is thus seen that she applied the word [effects] indiscriminately to her real and personal [property of the] estate, designating both kinds of property as her effects.''

In *Horton* v. *Garrison,* 1 Tex. Civ. App. 31, 20 S. W. 773, a judgment was entered which directed that the plaintiff in the case should recover a certain sum from the testator's

estate and that execution should be levied upon the "effects" of the estate. Under an execution issued in the case certain real estate was levied upon and sold, and in holding that the word "effects," as used in the judgment, included real estate, the court remarked that this word is usually held to include personal property only "but when we consider  * * *  that no distinction could properly have been made by the court rendering the judgment, between personal and real property of the estate, as both were equally subject to the debt, and that it was not necessary for the judgment to define what property should be levied upon, further than to indicate that it should be satisfied out of property belonging to the estate,  * * * we cannot conclude that  * * *  more than this was intended. Its only purpose was to show that the assets of the estate,  * * *  were to be subjected."

In 1 Alexander on Wills, 34, cited in the majority opinion, the text reads: "The word 'effects' may include real estate if from other expressions used in connection with the term it would appear that such was the intention of the testator."

In *Coffman's Admr.* v. *Coffman,* 131 Va. 456, 109 S. E. 454, the testator had made specific devises to three persons, and then by "a general and sweeping residuary clause" gave the balance of his effects to his wife, and the court after stating the general rule that this word means personal property only, held that in view of the specific devises and of the broad terms of the residuary clause it appeared the testator intended to include his real estate as well as his personal property by using the word "effects."

It is thus observed that in each of the cases cited in the majority opinion upon this proposition there were words or expressions used in the will itself, or references made therein, which clearly indicated to the court the intent of the testator to enlarge the meaning of the word which he used, so as to make it include real estate as well as personal property; but no case is referred to, and none has come under my notice, in

which the word has been given the broader meaning so as to make it include real estate in the absence of some circumstances similar to those recited in the cases above referred to. These cases are very instructive and serve to establish the rule that the meaning of the word "effects" can be broadened so as to include real estate only by the use of other terms in connection with it which clearly evince that such was the intent. And in the instant case, if in connection with the words "goods, chattels and effects" there were other terms or expressions used which indicated an intent on the part of the testator to cover both the real and personal property, the above cases would be in point to sustain the court's conclusion. But such terms and expressions are entirely absent from the will under consideration.

Considering that the property disposed of by the testator in this case was specifically mentioned in the will as "goods, chattels and effects," and leaving out all inferences and conjectures, it is entirely clear that the testator's intent as expressed by him in the will, was to cover personal property only.

But it is insisted by counsel for appellant that the use of the verb "devise" in connection with the verbs "give" and "bequeath" evinced an intention on the part of the testator to include real estate within the term "effects" by inferential reference. The verb "devise" is defined in Webster's International Dictionary as "to give by will; now used especially of real estate." Such is the primary meaning of the word; but it may be given a different meaning if required by the context.

In Page on Wills, section 2, it is said: "Of the verbs used to denote the act of making a will, 'devise' is properly used of realty, and 'bequeath' of personalty. Of the nouns used to name the various forms of gifts, 'devise' is used of a gift of realty. 'Legacy' is used as a gift of a sum of money, and 'bequest' is used of a gift of 'personalty' in general. None of these words have so fixed a legal meaning, however, that a

gift will fail because testator does not use the words descriptive of the gift or of the act of giving with technical accuracy.''

In Schouler on Wills, section 513, page 641, we find this statement: "We may add that while a devise relates in strictness to lands and is distinguishable from what is bequeathed, the terms 'devise and bequeath' are often conveniently associated. But in furtherance of a testator's intent, the words 'bequeath' and 'devise' may in any will be treated synonymously, if the context requires it; and the words 'devise,' 'legacy,' and 'bequest' may be applied indifferently to real or personal property.'' (*Oothout* v. *Rogers*, 59 Hun, 97, 13 N. Y. Supp. 120.)

In Stroud's Judicial Dictionary, after a brief history of the words "devise" and "bequeath" the author says: "It is still true that 'devise' and 'bequeath' may be used promiscuously and that if a testator 'devise' goods they will pass, and so he may 'bequeath' lands or houses; that is to say, where the property dealt with is clear the intention will not be defeated because the wrong verb is used.''

The description in the will of the property which the testator gave to his wife standing by itself is clear and unambiguous. It embraces personalty only. It was his "goods, chattels and effects.'' For us to say that by the use of the verb "devise" in making the disposition which he did, he intended to enlarge the meaning of the word "effects" so as to make it include real property, when that verb may be and frequently is used in wills to make disposition of personal property, would lead us into a realm of surmise and speculation which we are not permitted to enter.

Furthermore, it is not made to appear in the record before the court that the testator was the owner of any real estate at the time the will in question was executed. In designating the things of which he made disposition in his will he used the words "goods" and "chattels" which refer to personal property only, and followed these with the word "effects," which

is a term of very general signification when applied to personal property. Confronted with these conditions it would seem that the doctrine of *ejusdem generis* would apply. As stated in *State* v. *Williams,* 2 Strob. (S. C.) 474, by application of the maxim *ejusdem generis,* which is only an illustration or application of the broader maxim *noscitur a sociis,* general and specific words which are capable of an analogous meaning, being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general. (Endlich on Interpretation of Statutes, sec. 400.) Under this maxim it would seem that the general term ''effects'' should be limited in its meaning to the less general words with which it is associated, and thus would embrace personal property only.

In the majority opinion much stress is laid upon the presumption that a man who undertakes to make a will does not intend to die intestate as to any of his property. In connection with this, section 7025, Revised Codes of 1921, which provides: ''Of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy''—is cited. For reasons which will appear later, I do not consider that a discussion of either this presumption or this section is essential; but if it were it might be worth while to consider the effect which this section has upon the presumption as to intestacy which had existed prior to the time of its incorporation into the law of this state in 1877. This section, as pointed out in the majority opinion, was apparently copied from Field's Code, and in connection therewith, Mr. Field cited the case of *Booth* v. *Booth,* 4 Ves. Jr. Ch. Rep., at page 407, in which case there was involved the construction of a long and complicated will which made numerous specific devises and also contained a residuary clause. The majority opinion lifts a sentence bodily out of the middle of a paragraph and apparently undertakes to apply it to the facts of this case. If the authority cited is of any value for any purpose I think the quoted sentence

70 Mont.—19

should be read in connection with the preceding portion of the paragraph from which it was taken, so as to make the quotation complete, and it is as follows: "That there is a difference between a bequest of a legacy and a residue with reference to this point cannot be denied either upon principle or precedent. Every intendment is to be made against holding a man to die intestate who sits down to dispose of the residue of his property." In the instant case we are dealing with a legacy and not a residue clause. Of course, where, as in the *Booth Case*, the instrument as a whole discloses that after making disposition of his whole estate the testator deliberately attached a general residuary clause it would be logical to conclude that he did not intend to die partially intestate.

Many cases can be cited to sustain this presumption, but all of them lead back to our primary rule that the intention of the testator must prevail and that this intent must be gathered from the words of the will itself. Speaking of this presumption in *Gallagher* v. *McKeague*, 125 Wis. 116, 110 Am. St. Rep. 821, 103 N. W. 233, Mr. Chief Justice Cassoday said: "But the intention to pass the whole estate must be expressed in some form. We find no case where the presumption against intestacy has prevailed when the language of the will, fairly construed, is insufficient to carry the whole estate."

The majority opinion, however, overlooks another and equally potent presumption of law, to the effect that a testator will not be held to have disinherited an heir except where that conclusion is implied by the express provisions or by necessary implications from the provisions specially set forth in the will. (*Hunter* v. *Miller, supra*.)

Since the testator died without issue, and under the law of succession the respondents, his father and mother, would be entitled to receive one-half of any part of his estate as to which he died intestate, the construction of the will in the majority opinion results in disinheriting them by implication, and this is not permissible under the authorities. The rule deducible

from such authorities is stated in 28 R. C. L., page 229, section 190, as follows: "The heirs of a testator are favored by the policy of the law and cannot be disinherited upon mere conjecture, and when the testator intends to disinherit them he must indicate that intention clearly, either by express words or by necessary implication."

It does not appear, however, that the two presumptions above adverted to are of any assistance in construing the will in question, since neither of them can prevail over the other. In *Watson* v. *Martin*, 228 Pa. 248, 20 Ann. Cas. 1288, 77 Atl. 450, the court said: "The rule that a testator is presumed to have intended not to die intestate as to any part of his estate is not of greater force than the rule that an heir is not to be disinherited except by express words or necessary implication."

My conclusion in this case is further strengthened and justified by the rules that, when a particular construction of a will casts property where the law would cast it, that is sufficient to turn the scale in favor of such construction, and that if it is uncertain and doubtful whether the testator intended to devise real estate the title of the heir must prevail, which are sustained by many authorities, among which are *Blaisdell* v. *Hight*, 69 Me. 306, 31 Am. Rep. 278; *Wright* v. *Hicks*, 12 Ga. 155, 56 Am. Dec. 451; *Murdoch* v. *Bilderback*, 125 Mich. 45, 83 N. W. 1007; *In re Shumway's Estate*, 194 Mich. 245, L. R. A. 1918A, 578, 160 N. W. 595; *Kilgore* v. *Kilgore*, 127 Ind. 278, 26 N. E. 56; 28 R. C. L. 230; *Canfield* v. *Gilbert*, 3 East, 516 (525), vol. 102, Full Reprint, 694.

In my little journeys into that particular province of the great republic of letters which embraces the literature of the law of wills, I have become convinced of the truth of what Lord Coke expressed long ago when he said "Wills and the construction of them do more perplex a man than any other learning." I am convinced, however, that the construction placed upon the will under consideration is erroneous; that the words of the will itself, with the aid of such slight circum-

stances as are disclosed in the record, do not warrant the con-
clusion that the testator expressed an intent to include both
real and personal property by the use of the word "effects";
and that such conclusion can be drawn only by entering into
the realm of speculation and conjecture. I think the judgment
appealed from should be affirmed.

Rehearing denied May 8, 1924.