## BLACKER et al. v. THATCHER.

### No. 10707.

Circuit Court of Appeals, Ninth Circuit.

Oct. 18, 1944.

Rehearing Denied Dec. 2, 1944.

Writ of Certiorari Denied Feb. 26, 1945.

See 65 S.Ct. 686.

256

T. B. Weir, of Helena, Mont., for appellants.

Lester H. Loble, A. H. Angstman, and Milton C. Gunn, all of Helena, Mont. (C. T. Busha, Jr., of Great Falls, Mont., and Gunn, Rasch & Gunn, of Helena, Mont., of counsel), for appellee.

Before DENMAN, STEPHENS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellee, a citizen of Oregon, filed her complaint in the court below naming as defendants the appellants, who are citizens of Montana. Following are the matters pleaded:

Samuel T. Hauser, a resident of Lewis and Clark county, Montana, died on November 9, 1941, leaving a holographic will made in January of that year. On June 27, 1942, the will was admitted to probate in the district court of Montana for Lewis and Clark county, and appellant Weir was appointed executor thereof. Weir has since continued to act as executor under authority of the court appointing him.

The thesis of the pleading is that by his will, a photostatic copy of which is annexed, Hauser disposed only of certain designated personal effects, and that as to the residue of his estate he died intestate. The complainant is alleged to be the sister of Hauser and as such entitled to inherit the property of which no testamentary disposi-

tion had been effected. This property is said to have a value in excess of $3,000. It is alleged that appellant Katherine Rebecca Blacker, who is named in the will, is not an heir of Hauser. Finally, it is averred that a controversy exists between the complainant on the one hand and appellants on the other as to the construction of Hauser's will, in that the latter parties claim that the will bequeaths all of decedent's property to appellant Blacker. Judgment is prayed to the effect that Hauser died intestate as to all of his property, real and personal, except the specific items mentioned in the will.

In their answer appellants moved for a dismissal of the complaint on the ground that, as appears therein, Hauser's estate is in process of administration in the proper district court for Montana; and that under the laws of Montana exclusive jurisdiction over the probate of wills and the administration of estates of deceased persons resides in its district courts. The factual allegations of the complaint are admitted but issue is taken in respect of complainant's construction of the will. The answer contains affirmative matter bearing on the circumstances of the testator's life. It is alleged that at the time of the making of his will his wife was dead; that appellant Blacker had from childhood been the close companion and associate of Hauser and his wife; that she had been engaged to marry Hauser for some months prior to his decease; and that for many years Hauser had been estranged from the complainant, his sister.

Appellee moved for judgment on the pleadings and her motion was granted. The court found that jurisdiction existed on diversity grounds, that by Hauser's will his household furniture, tableware, pictures, silverware and jewelry were bequeathed to appellant Blacker, but that as to the residue of his property Hauser died intestate. Judgment was entered accordingly.

On the appeal two propositions are urged, first, that the court should have declined to entertain the suit, and second, that the court was in error in its construction of the will.

1. As in most of the states, including practically all of those in the West, the laws of Montana provide a comprehensive system of probate, beginning—where a will exists—with a petition for the probate thereof and the appointment of an executor, and terminating with a decree of final distribution. In Montana this final order

must name the persons entitled to the estate and the proportions in which they shall receive it; and such persons may, by suit, recover their respective shares from the executor or administrator. "Such order," says the statute, "is conclusive as to the rights of heirs, legatees, or devisees, subject only to be reversed, set aside, or modified on appeal." Section 10328, Revised Codes of Montana, 1935. In effect where conflict between them may be thought to exist the order supersedes the provisions of the will itself. Town of Cascade v. Cascade County, 75 Mont. 304, 243 P. 806, citing More v. More, 133 Cal. 489, 65 P. 1044, 66 P. 76.

The probate of an estate is a proceeding in a court of general jurisdiction. Montana Constitution, § 11, Article VIII. The proceeding embraces proof of heirship and the contest of wills, and necessarily it comprehends the interpretation of the latter. The proceeding is in the nature of a proceeding in rem, to which all the world are deemed parties, and in the course of it all persons deeming themselves interested as heirs, legatees, or otherwise, are afforded the opportunity of establishing their claims. §§ 9990–10400.51, Mont.Rev.Codes, 1935.

■ In our view the assumption by the federal court of authority to construe the will, now in process of probate, smacks of gratuitous interference rather than of the spirit of comity which ought to obtain between courts of independent and coordinate jurisdictions. If this were a case of first impression we would have no hesitancy in holding that the suitor should have been remitted to her remedy in the court where the probate proceeding is pending.[1] But a study of the decisions of the Supreme Court persuades us that the settled rule is otherwise.

Many cases of a cognate nature have arisen in the federal jurisdiction. In most of them the lower federal courts have shown a disinclination to interfere; but the Supreme Court has adhered to a different concept. Perhaps the most comprehensive statement of its view on the subject is contained in the opinion of Mr. Justice Day in Waterman v. Canal-Louisiana Bank Co., 1909, 215 U.S. 33, 30 S.Ct. 10, 54 L.Ed. 80, an opinion from which Mr. Justice White alone dissented. We quote from pages 43, 44 of the opinion in 215 U.S., page 12 of 30 S.Ct., 54 L.Ed. 80: "From an early period in the history of this court, cases have arisen requiring a consideration and determination of the jurisdiction of the courts of the United States to entertain suits against administrators and executors for the purpose of establishing claims against estates, and to have a determination of the rights of persons claiming an interest therein. And this court has had occasion to consider how far the jurisdiction in equity of the courts of the United States in such matters may be affected by the statutes of the states providing for courts of probate for the establishment of wills and the settlement of estates. We will not stop to analyze or review in detail all these cases, as they have been the subject of frequent and recent consideration in this court. The general rule to be deduced from them is that, inasmuch as the jurisdiction of the courts of the United States is derived from the Federal Constitution and statutes, that, in so far as controversies between citizens of different states arise which are within the established equity jurisdiction of the Federal courts, which is like unto the high court of chancery in England at the time of the adoption of the judiciary act of 1789, * * * the jurisdiction may be exercised, and is not subject to limitations or restraint by state

---

[1] In the states which have comprehensive systems of probate, the state courts possessed of general equity jurisdiction invariably pursue this course, either because the statutes are thought to deprive them of power in probate matters, or because on principles of comity they regard their equitable powers in such matters as suspended in all ordinary cases. See discussion of the general subject in 1 Pomeroy's Equity Jurisprudence, 5th Ed., (1941) §§ 346 to 352. These courts exercise jurisdiction only for the purpose of granting remedies which will serve to aid, or remove obstacles from, a pending administration. As stated by Pomeroy (footnote 3 to the text of § 352) this limited jurisdiction is exercised for the following purposes, among others: "To construe doubtful provisions of a will, and to direct the executors with respect to their duties when a trust is created by it; but there is no such equitable jurisdiction to interpret a will * * * which only deals with and disposes of purely legal estates or interests, and which makes no attempt to create any trust relations with respect to the property donated. This special jurisdiction to interpret a will is wholly an outgrowth and application of the general power of trusts." Many illustrative cases are cited by the author.

legislation establishing courts of probate, and giving them jurisdiction over similar matters. This court has uniformly maintained the right of Federal courts of chancery to exercise original jurisdiction (the proper diversity of citizenship existing) in favor of creditors, legatees, and heirs, to establish their claims and have a proper execution of the trust as to them."

■ The rule, it has been held, is subject to qualifications. Thus while the courts of the United States may make decrees binding upon the parties, they can not seize or control property in the possession of the state court. Byers v. McAuley, 149 U.S. 608, 13 S.Ct. 906, 37 L.Ed. 867. And in states where the probate proceeding is purely one in rem and not a suit inter partes, sustainable in a court of equity, they can not entertain jurisdiction over a bill to set aside the probate of a will. Farrell v. O'Brien, 199 U.S. 89, 25 S.Ct. 727, 50 L. Ed. 101; Broderick's Will, 21 Wall. 503, 22 L.Ed. 599. But aside from qualifications such as these, the Court appears broadly to have insisted upon the proposition that the jurisdiction of the federal courts over controversies between citizens of different states can not be impaired by state laws prescribing the modes of redress in their courts, or regulating the distribution of their judicial power. Payne v. Hook, 7 Wall. 425, 74 U.S. 425, 19 L.Ed. 260; McClellan v. Carland, 217 U.S. 268, 30 S.Ct. 501, 54 L.Ed. 762; Hyde v. Stone, 20 How. 170, 15 L.Ed. 874; Suydam v. Broadnax, 14 Pet. 67, 10 L.Ed. 357.

■ Among cases traditionally cognizable in equity were, of course, those having to do with the administration of estates and the construction of wills.[2] In Gaines v. Fuentes, 92 U.S. 10, 22, 23 L.Ed. 524, it was said that whenever a controversy in a suit between parties arises "respecting the validity or construction of a will, or the enforcement of a decree admitting it to probate, there is no more reason why the Federal courts should not take jurisdiction of the case than there is that they should not take jurisdiction of any other controversy between the parties." And in Byers v. McAuley, supra, 149 U.S. page 620, 13

S.Ct. page 911, 37 L.Ed. 867, it was held that where no adjudication has as yet been made as to who are distributees of an estate in process of administration, the federal court is entitled to "entertain jurisdiction in favor of all citizens of other states, to determine and award their shares in the estate." The pertinent decisions of the Court leave no room for the belief that the federal courts, on principles of comity, have any discretion to exercise in respect of the entertainment of suits of this nature.[3]

It is suggested that the federal court is without power to compel the Montana court to accept its interpretation of the will. But the presumption has been indulged that probate courts will respect adjudications made in settling the rights of parties in suits in the courts of the United States. Waterman v. Canal-Louisiana Bank Co., supra, 215 U.S. page 46, 30 S.Ct. 13, 54 L.Ed. 80. It is there said that "a judgment of a Federal court awarding property or rights, when set up in a state court, if its effect is denied, presents a claim of Federal right which may be protected" in the Supreme Court.

2. The will is entirely in the handwriting of the testator. It is apparent from a study of the photostatic copy before us that Hauser, while by no means an ignorant man, was not an individual of any considerable education. One gathers that he had access to a form which he was endeavoring to follow. Misspellings of simple words are of frequent occurrence, there are omissions and abbreviations; and the handwriting, while easily legible, is crude. Blots or occasional sputters of the pen are said to render the matter of punctuation doubtful in some instances. On the other hand it is notable that the several provisions of the will are carefully segregated in numbered paragraphs. And on the whole the testator performed rather well the task he had set for himself.

Following is a copy of the instrument, reproduced as faithfully as type permits:

"I, Samuel T. Hauser of Helena, Montana being over Twentyone yars of age and f sound diposing mind & memory; I do now make publish & declare

---

[2] Cf. 1 Pomeroy's Equity Jurisprudence, 5th ed., § 346.

[3] We think the recent case of Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 is not authority for the proposition that such discretion exists in an ordinary equity suit. Compare Meredith v. Winter Haven, 320 U.S. 228, 64 S.Ct. 7. The Brillhart case was a suit under the Federal Declaratory Judgments Act, Jud.Code § 274d, 28 U.S.C.A. § 400, where, although jurisdiction exists, the court is not thought under compulsion to exercise it.

this my Last Will and Testament of follows:

*First:* I direct Executor, hereinafter named, to pay all my just debts, funeral expenses, and expenses of my last illness as soon after my decease as conveniently may be done.

*Second:* I give to Katherine Rebecca Blacker all household furniture, table ware pictures, silverware, & jewelery. All the rest, residue and remainder of my estate, real personal and mixed and where soevr situated.

*Third I* hereby appoint Taylor B. Weir f Helena Mont. Executor of this my Will to act wihout bond.

(all)

*Forth* I hereby revoke ∧ off other Wills & and Codicils made by me at any time heretofore made.

*Fifth* I have hereunto subscribed my name Samuel T. Hauser of Helena Montana this 28th day of January, 1941

Samuel T. Hauser"

■ Numerous provisions dealing with the interpretation of wills are contained in the Montana statutes. Of two modes of interpretation, that is to be preferred which will prevent intestacy, either total or partial.[4] The words of the instrument are to receive an interpretation which will give some effect to every expression, rather than an interpretation which will render any of the expressions inoperative.[5] The will is to be construed according to the intentions of the testator, so far as is possible to ascertain them.[6] Words used in the instrument are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be ascertained.[7] In cases of uncertainty arising upon the face of the will, the testator's intention is to be ascertained from the words of the instrument, taking into view the circumstances under which it was made, exclusive of his oral declarations.[8]

■ These statutory rules are but declaratory of the general law. While fixed rules for the interpretation of writings afford helpful guides, they yield in cases of the construction of wills to the basic principle that the thing to be sought for and found,

if possible, is the intention of the testator. The principle has not been better stated than in Colton v. Colton, 127 U.S. 300, 310, 8 S.Ct. 1164, 1168, 32 L.Ed. 138: "The object, therefore, of a judicial interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole instrument and a comparison of its various parts in the light of the situation and circumstances which surrounded the testator when the instrument was framed."

■ A study of the Hauser will leaves no doubt that it was the purpose of the testator to dispose of all he possessed. So much appellee concedes. The problem lies in determining, if possible, the identity of the beneficiary intended to take the residue. We think the problem is not insoluble if attention be paid to the instrument as a whole, more particularly to the careful arrangement or segregation of its several parts.

The paragraph numbered second is the only one in which disposition is made of anything. The language of that clause indicates unmistakably that the testator intended therein to dispose of all the property he had. No other person than Katherine Rebecca Blacker is named in the clause and her name appears at its commencement. It seems reasonably certain that the descriptive matter found in the paragraph, including that pertaining to the residue of the estate, was intended to relate back to the all-important opening pharse: "I give to Katherine Rebecca Blacker." The specific enumeration at the outset of household and personal effects, sometimes thought by laymen to be claimable as of course by immediate relatives, does not seriously militate against this view. Nor do infirmities in grammatical composition destroy the general sense of the paragraph.

We conclude that the will gives the entire estate of the decedent to appellant Blacker. The situation of the testator and the circumstances of his life when the will was drawn are entirely consistent with this construction. Cf. In re Spriggs' Estate, 70 Mont. *272*, 225 P. 617. Those circumstances, as detailed in appellants' answer, are ad-

---

4 Montana Revised Codes, 1935, § 7025. The statute employs the term "total intestacy." However, the case of In re Spriggs' Estate, 70 Mont. 272, 275, 225 P. 617, holds that an interpretation is to be adopt-

ed if possible which will prevent partial intestacy.

5 Ibid § 7024.

6 Ibid § 7016.

7 Ibid § 7023.

8 Ibid § 7017.

mitted to be true by the motion for judgment on the pleadings.

Reversed with directions to make findings and to enter judgment in harmony with this opinion.