No. 85-171

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

WILD WEST MOTORS, INC.,

        Plaintiff and Respondent,

-vs-

MARCELLAMAE LINGLE,

        Defendant and Appellant,

---

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Hash, Jellison, O'Brien & Bartlett; James C. Bartlett,
        Kalispell, Montana

    For Respondent:

        Measure, Ogle & Ellingson; Jeffrey D. Ellingson,
        Kalispell, Montana

---

Submitted on Briefs: June 28, 1985

Decided: November 18, 1986

Filed: NOV 18 1986

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

In this cause, we determine that a prejudgment writ of attachment issued by the District Court, Eleventh Judicial District, Flathead County, was in error and we therefore vacate the same. We further determine that the possession by the attorney for Wild West Motors, Inc. of $10,000 due to Marcellamae Lingle "in trust" is in violation of the Canons of Professional Ethics, and we direct the immediate transfer of those funds by the attorney to Marcellamae Lingle.

In a decree of dissolution of marriage between Marcellamae Lingle and Robert L. Lingle on July 29, 1980, in the same District Court, the separation and property settlement agreement between the married persons was incorporated as a part of the decree. Under the terms of the agreement, now decretal, Robert was to pay Marcellamae $200 per month, continuing until such time as he paid "to wife the cash sum of $10,000." The cash payment of $10,000 was agreed to be a property division, apparently to be derived from the sale of marital real estate by the husband. It is specifically designated "not alimony or maintenance."

When Robert had paid monthly payments amounting to approximately $10,000, he apparently thought that his total obligations under the decreed agreement were complete. Marcellamae's attorney, however, insisted in writing that in addition to the monies already paid, Marcellamae was to receive a cash sum of $10,000 as a property division, and that until the cash payment was made by Robert, the $200 per month payments continued.

Robert, contending he did not understand that part of the property settlement agreement, sought counsel other than the attorney who had represented him in the dissolution action. He retained Jeffrey D. Ellingson as his attorney on April 23, 1984. On Robert's behalf, Ellingson contacted both Robert's former attorney and the attorney for Marcellamae. Marcellamae was adamant that she was entitled to the full amount of the cash payment and that the monthly payments continued until she received the cash payment. The malpractice carrier for Robert's former attorney denied any claim.

In the meantime, in November, 1982, Robert Lingle, Jr. the son of Robert and Marcellamae, purchased under a contract and security agreement a 1983 Toyota 4x4 pickup. Marcellamae signed the contract and security agreement as a co-buyer, apparently in accommodation for her son. The vehicle was purchased at Wild West Motors, Inc. The purchasers under the contract did not make the payments as required, and the vehicle was repossessed and resold, resulting in a deficiency of $4,241.76 still owing on the contract.

Ellingson had begun representing Wild West Motors, Inc. on January 19, 1984. On August 22, 1984, he became aware of the claim of Wild West Motors, Inc. against Marcellamae for the deficiency under the contract. Ellingson, as attorney for Wild West Motors, Inc., undertook to collect the deficiency from Marcellamae. It appears indirectly from the papers here filed that Robert Lingle, Jr. was probably judgment-proof.

On April 23, 1984, therefore, under the facts of this case, Ellingson was representing Wild West Motors, Inc. for its claim against Marcellamae arising out of the purchase of

the Toyota vehicle. He was also representing Robert Lingle, Sr. in the cash payment dispute arising out of the marital dissolution between Robert Lingle, Sr. and Marcellamae Lingle.

In Ellingson's own words, this is what happened:

On August 28, 1984, I met with Bob Sr. He had decided at that time to pay over the additional $10,000 payment to Bartlett [Marcellamae's attorney] under the terms of the property settlement agreement with Marcellamae. He decided not to pursue any further claim against either Marcellamae or [the former attorney]. I told him at that meeting that I had been approached by Wild West to bring a claim against his son, Bob Jr. and his former wife, Marcellamae, as joint and several obligors for the deficiency. I told him that the claim would be for approximately $5,000. I asked him whether he had any objections to my bringing the claim against his former wife, Marcellamae. Bob Sr. stated that he had no such objection. By that time he was quite angry with his former wife and thinking that she was not deserving of the additional $10,000.

It was at that meeting of August 28, 1984 that I first discussed with Bob Sr. the possibility of attaching the $10,000 payment in order to pay off my other client, Wild West. I told Bob Sr. that Wild West had agreed not to go after Bob Jr. for repayment if they could collect from Marcellamae. Bob Sr. was very pleased with the idea of having some of the $10,000 pay off his son's debt rather than go to his former wife. His only concern was that he not be held liable for any further payment after paying the $10,000 into my trust account. I advised him that I would discuss the matter with Dugan Anderson of Wild West and get back to Bob Sr.

I called Dugan Anderson also on August 28, 1984, and explained the situation to him. I advised Mr. Anderson that Bob Sr. would allow the attachment of the $10,000 so long as he was held harmless from any other claims as a result of that attachment. Mr. Anderson agreed to such an indemnification agreement and asked me to draft the appropriate documents. Dugan Anderson told me that Bob Jr. was apparently insolvent and that Wild West's only possible means of collecting was against Marcellamae. Marcellamae also appeared to be judgment proof in that her only substantial asset was her home, protected by a homestead exemption. It appeared, therefore, that the only way Wild West would be able to recover the deficiency would be by attachment of the $10,000 from Bob Sr. to Marcellamae.

Bob Sr. deposited $10,000 into my trust account on August 31, 1984.

Robert Lingle, Sr. and his wife, Ardeth Lingle, on August 31, 1984 signed the agreement with Wild West Motors, Inc. and Wild West signed the same on September 5, 1984. By its terms, Lingle paid $10,000 to Ellingson to be held in trust by him until such times as the funds "are duly attached through proper legal process or until Wild West Motors, Inc. directs Jeffrey D. Ellingson to pay all or any of such funds to Marcellamae Lingle in full satisfaction of the above described decree of dissolution." The agreement further provided that Wild West Motors, Inc. would pay the $200 per month to Marcellamae during the pendency of the agreement until payment to Marcellamae was complete. Wild West was granted a lien in the $10,000 for any payments made by it.

In a further letter to Robert Lingle, Sr., on September 4, 1984, Ellingson made clear that by the execution of the agreement with Wild West Motors, Robert Lingle was to be fully indemnified by Wild West Motors from any further loss or claim which Marcellamae might make against him.

On October 24, 1984, Wild West Motors, Inc. filed suit against Marcellamae Lingle for the deficiency arising out of the purchase of the Toyota vehicle. On the same date, Ellingson, as attorney for Wild West Motors, Inc. filed a motion for a prejudgment writ of attachment of $6,000 of the monies now held in trust by him, as attorney for Robert Lingle, Sr. After briefs and hearing, the District Court ordered a prejudgment writ of attachment against the "trust" funds. By stipulation the funds have been placed in an interest-bearing account awaiting the final disposition of the matter by the courts.

Marcellamae appealed to this Court from the prejudgment writ of attachment. She contends for various reasons that the writ was issued in error, including her contention that the son, Robert Lingle, Jr. had signed a promissory note after his default for the amount of the deficiency which constituted a novation. Wild West Motors, Inc. has responded that the writ of attachment was properly issued; that the monies impounded are a debt due to Marcellamae; and that no novation arose because of the promissory note.

Upon examination of the matter on appeal, this Court determined that further findings of fact were necessary from the District Court. Accordingly, we remanded to the District Court for a full determination relating to the facts concerning the property settlement agreement, and particularly the attorney-client relationships that existed between Wild West Motors, Inc., Robert Lingle, Sr., and Jeffrey D. Ellingson. The above statement of facts reflects those findings.

The findings of the District Court in answer to our remand came to us on March 1, 1986. The District Court found that since Ellingson had kept Wild West Motors, Inc. and Robert Lingle, Sr. fully informed of all risks and advantages of the attachment of the said $10,000 and since it was in both parties' interests to have the funds attached from Ellingson's trust account, there was no impropriety on Ellingson's part during the course of these events. The court found that Robert Lingle, Sr. had requested the attachment to be made, was agreeable to the attachment in order to have his son's debt paid by his former wife and was apparently more than happy to have the funds attached, if they did not go to his former wife, and the credit for such

- 6 -

"funds did clear off Robert Lingle, Sr.'s son's debt with Wild West Motors."

The District Court apparently judged Ellingson's professional conduct under Rules 1.7 and 1.8 of the Rules of Professional Conduct relating to conflict of interest. Ellingson did, in truth, reveal to his clients, Wild West Motors, Inc. and Robert Lingle, Sr. all of the facts relating to the transaction. Their interests were not adverse: Robert Lingle, Sr. could save his son from an unpaid judgment, and at the same time cause a reduction of the monies he had agreed to pay Marcellamae. Wild West Motors, Inc. was assured of collecting a deficiency it might not otherwise get.

There is, however, another Rule of Professional Conduct against which Ellingson's actions must be weighed. Rule 1.15 of the Rules of Professional Conduct provides in (b):

> Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

Ellingson's duty under the foregoing rule was upon receiving the monies in trust for Marcellamae to deliver the monies to her promptly. Ellingson's client, Robert Lingle, Sr. owed those monies to Marcellamae, in a marital matter entirely separate from the vehicle purchase. Ellingson could not properly "by agreement with his client" frustrate the payment to Marcellamae. If his agreement with Robert Lingle, Sr. interfered with his duty of prompt payment as trustee, Ellingson as an attorney should not have accepted the trust.

Having accepted the money in trust, it was his duty to transmit it promptly to Marcellamae. Instead he withheld the funds from Marcellamae from August 31, 1984, when he received the funds in trust, to March 8, 1985, when the prejudgment writ of attachment was ordered. The distribution of funds to Marcellamae is still subject to his signature and control today.

Under Rule 4.4 of the Rules of Professional Conduct, it is stated:

> In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person,. . .

The prejudgment writ of attachment issued by the District Court was in error. Ellingson admits he holds the money "in trust." A voluntary trust is created when the trustor indicates with reasonable certainty the subject, purpose and beneficiary of the trust. Section 72-20-108, MCA. The subject of this trust was the $10,000; the purpose of the trust was to satisfy Robert Lingle, Sr.'s contractual obligation to Marcellamae; and Marcellamae was the beneficiary of the trust. In all matters concerning this trust, Ellingson was bound to act in good faith toward his beneficiary and not to obtain any advantage therein over Marcellamae by the slightest adverse pressure of any kind. Section 72-20-201, MCA. He was prohibited from using or dealing with the trust property for his own benefit or for any other purpose not connected with the trust in any manner. Section 72-20-203, MCA. The prejudgment writ of attachment order issued by the District Court included attorney fees for Ellingson's firm of $734.35.

When a party undertakes the obligation of a trustee to receive money or property for transfer to another, he takes

with it the duty of undivided loyalty to the beneficiary of the trust. The undivided loyalty of a trustee is jealously insisted on by the courts which require a standard with a "punctilio of an honor the most sensitive." Meinhard v. Salmon (N.Y. 1928), 164 N.E. 545. A trustee must act with the utmost good faith towards the beneficiary, Campbell v. U.S. (9th Cir. 1926), 12 F.2d 873, and may not act in his own interest, or in the interest of a third person. Restatement 2d., Trusts, § 170(1). Upon development of an irreconcilable conflict between self-interest and fiduciary responsibility, the trustee has a choice of subordinating his self-interest or resigning his trust. A trustee may not deal with himself as an individual concerning the trust funds for any purpose not connected with the trust. In re Allard Guardianship (1914), 49 Mont. 219, 141 P. 661. Even though here the trustor, Robert Lingle, Sr., authorized the self-dealing of the trustee, Ellingson as trustee was required to renounce all self-interest and to act in finest loyalty to the beneficiary within the terms of the trust. 76 Am.Jur.2d Trusts, 538-539, § 319. If the terms of the trust make loyalty to the beneficiary impossible, the trustee should decline the trust.

There was a route open to Wild West Motors, Inc. which might have brought about a prejudgment attachment of the $10,000 payment. Section 27-18-405, MCA, provides for the attachment of debts or credits in the possession of a third person. Robert Lingle, Sr.'s contractual debt to Marcellamae was attachable, certainly before the transfer of the funds in trust to Ellingson. Once Ellingson received in trust possession of the legal payment for transfer to Marcellamae,

his trust relationship barred his acting in any way disadvantageously to Marcellamae.

The prejudgment writ of attachment issued in this cause in the District Court is hereby vacated and set aside. Jeffrey D. Ellingson, as an officer of this Court, is hereby directed to pay over to Marcellamae, through her attorney, the full amount of $10,000, plus any accrued interest thereon. Because this Court was not aware that the order of the District Court in answer to our remand was on file in this Court from March 1, 1986 through October 1, 1986, the monthly payments to Marcellamae which may otherwise be due for that period are herewith excused. Remittitur of this cause shall occur forthwith.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices