No. 97-113

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997

IN THE MATTER OF THE ESTATE OF:

HARRY ALBERT BOLINGER, III,
Deceased.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Charles F. Angel, Angel Law Firm, Bozeman, Montana

For Respondent Personal Representative:

John Frohnmayer, Bozeman, Montana

For Respondent Children:

Gregory O. Morgan, Bozeman, Montana

Submitted on Briefs: May 29, 1997

Decided:    August 1, 1997
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from the December 18, 1996 Findings of Fact, Conclusions of Law and Order of the Eighteenth Judicial District Court, Gallatin County, determining by way of summary judgment that Decedent's will created a trust for the benefit of his children; terminating the trust in favor of the children and distributing the corpus of the trust to them; denying the application of Marian Bolinger (Marian) to be appointed personal representative of Decedent's estate; and appointing Deborah Reichman (Deborah) as personal representative. We reverse and remand for further proceedings consistent with this opinion.

Background

Harry Albert Bolinger, III, (Decedent), died March 23, 1995. Decedent's estate was initially commenced as an intestacy proceeding with Deborah being nominated by Decedent's three adult children (the children) and subsequently being appointed as personal representative. On July 13, 1995, however, H. A. Bolinger (Hal), father of Decedent, filed a petition for formal probate of will and a request to be appointed personal representative. The November 15, 1984 will so offered for probate devised all Decedent's estate to Hal, or, in the event that Hal predeceased Decedent, to Hal's wife (Decedent's step-mother), Marian. Specifically, the Fifth paragraph of the will, the language of which is at issue here, provides:

I intentionally give all of my property and estate to my said father, H. A. Bolinger, in the event that he shall survive me, and in the event he shall not survive me, I intentionally give all of my property and estate to my step-mother, Marian Bolinger, in the event she shall survive me, and in that event, I intentionally give nothing to my three children, namely: Harry Albert Bolinger, IV, Wyetta Bolinger and Travis Bolinger, or to any children of any child who shall not survive me. I make this provision for the reason that I feel confident that any property which either my father or my step-mother, Marian Bolinger, receive from my estate will be used in the best interests of my said children as my said beneficiaries may determine in their exclusive discretion.

The will nominated Hal as personal representative with Marian as the alternate. Hal subsequently renounced his right to serve as personal representative and suggested the appointment of Marian, who petitioned to be appointed on November 6, 1995. Decedent's children objected, contending, among other things, that the will was void as a matter of law because of undue influence or constructive fraud on the part of Hal, and, in the alternative, that the will created a trust on behalf of the children. The children moved for summary judgment. Marian filed certain deposition and discovery responses and the court took those into consideration. The court did not enter any findings or conclusions as to undue influence or constructive fraud. However, following the receipt of additional briefs as to the construction of the Fifth paragraph of the will, and, after taking into consideration (over Marian's objection) an

affidavit of
John B. Folsom, Professor of English Emeritus, Montana State University, submitted by the children, the court ruled that the will, through the language in the Fifth paragraph created an express trust in favor of Decedent's children. Because Marian would be the trustee under the Fifth paragraph of the will and because of the admitted hostility between her and the children, the court also ruled that the trust should be terminated and the trust corpus distributed to them with Deborah continuing to act as the personal representative.

On appeal from this decision, Marian raises three issues:

1. Whether the District Court erred in its legal conclusion that the Fifth paragraph of Decedent's will created an express trust for the benefit of Decedent's three children;

2. Whether the District Court erred in considering the affidavit of John B. Folsom;

3. Whether the District Court erred in its Findings of Fact Nos. 20 and 21 regarding an alleged partnership between Hal and Decedent.

We will address Issues 1 and 2 together. We will not address Issue 3 or the court's findings and conclusions as to that issue as Marian states in her brief on appeal that Issue 3 is the subject of other proceedings and that she merely brings the matter to our attention here so as to avoid any later waiver argument.

Standard of Review

We review a district court's grant of a motion for summary judgment de novo and apply the same criteria under Rule 56, M.R.Civ.P., as did the district court. Missoula Rural Fire Dist. v. City of Missoula (Mont. 1997), ___ P.2d ___, ___, 54 St. Rep. 480, 481. We review the district court's findings of fact to determine whether they are clearly erroneous under the three-part test adopted in Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 820 P.2d 1285, and we review the court's conclusions of law simply to determine whether the court's interpretation of the law is correct, Matter of Estate of Dern Family Trust (Mont. 1996), 928 P.2d 123, 127, 53 St. Rep. 1087, 1089. As with the judicial interpretation and construction of any instrument, the question of whether any particular language in a will creates an express trust, given the circumstances under which the trust was executed, is a question of law for the court to decide. See Klawitter v. Dettmann (1994), 268 Mont. 275, 281, 886 P.2d 416, 420. Here, accepting the facts found by the court, we conclude, nevertheless, that the District Court erred as a matter of law in its interpretation and construction of the effect

of the
language of the Fifth paragraph of Decedent's will.

Discussion

On the basis of the discovery responses and depositions provided as part of the summary judgment proceedings, the District Court found that both Hal and Marian believed that the language in the Fifth paragraph of Decedent's will created a trust (although in a second deposition Marian contended that she was mistaken in her initial impression in this regard). The court also found that Marian believed that at the time Decedent's will was drafted and executed, the children were minors and that Decedent used the language in the will to prevent his ex-wife from obtaining control over his estate.

The court also agreed with Professor Folsom that, when read in its entirety, the Fifth paragraph of the will expressed Decedent's intention that all of his property must be used in the best interests of his children. The court found that the subject or res of the trust was all of Decedent's property and that the testator's purpose in creating the trust was to ensure that his assets would be used in his children's best interests. The court then concluded that Decedent having thus manifested his intention, and, on the basis of the criteria and authorities argued by the children, an express trust for the children's benefit was created under the Fifth paragraph of Decedent's will.

On appeal from the District Court's decision, Marian argues that proof of an express trust requires clear and convincing evidence that the trustor intended to create a trust and that devises, bequests and gifts that do not contain any restrictions on use or disposition of the property involved do not create an express trust. She contends that the use of "precatory" words by a testator, that is words which express only a wish or recommendation as to the disposition of property, are not sufficient to establish an intention to create a trust. She cites, among other cases, our decision in Stapleton v. DeVries (1975), 167 Mont. 108, 535 P.2d 1267, in support of her position in this regard. Furthermore, she maintains that the trial court erred in considering the affidavit of Professor Folsom because the question of whether given language in a will creates an express trust is one of law, and, as such, is not a proper subject of expert opinion.

In support of the District Court's decision, the children argue that where the testator manifests his intention to create a trust, no particular form of words or conduct is necessary, and that, providing that the trustor indicates with reasonable certainty the subject, purpose and beneficiary of the trust, an express trust is created. The children contend that, under the facts here and under these criteria, the language used by

Decedent in the Fifth paragraph of his will created an express trust in their favor. They maintain that a trust must be construed in a manner so as to implement the trustor's intent and that, here, Decedent clearly expressed his intention that his property be used for the benefit of his children. The children cite a 1894 New York case, People v. Powers (N.Y. Sup.Ct.1894), 29 N.Y.S. 950, rev'd on other grounds, 41 N.E. 432 (N.Y. 1895), for the proposition that a testator's expression of "confidence" that a bequest will be used to benefit another is sufficient to create a trust. Finally, as to the matter of the Folsom affidavit, Decedent's children maintain that the professor did not express an expert opinion on the ultimate legal question, but, rather, his opinion went simply to "the factual issue of the grammatical construction of [the Fifth paragraph]--not on whether the language creates an express trust."

At the outset, we note that there are differences in the statutory law in effect at the time that Decedent executed his will in November 1984 and when he died in March 1995. While the parties do not take any definitive position as to which body of statutory law applies in this case as to this first issue, the District Judge cites to the law in effect at the time Decedent died and which is presently in effect, 72-33-202, MCA. In this regard, we note that 72-33-102, MCA, provides that after September 30, 1989, the present "Trust Code" (Title 72, Chapters 33 through 36) applies to all trusts regardless of when they were created and to all proceedings concerning trusts whenever they were commenced unless, in the opinion of the court, application of a particular provision of the Trust Code would substantially interfere with the rights of the parties and other interested persons or with the effective conduct of the proceedings. While no such opinion, one way or the other, explicitly appears in the trial court's decision, as mentioned, the court did cite to the present version of the code and thus, implicitly, determined that this statutory law applied.

We also note, however, that various cases cited in the briefs and in the trial court's decision predate the Legislature's 1989 adoption of the present Trust Code and that in certain instances those cases tend to track the statutory language in effect at the time the cases were decided instead of the present statutory law. See e.g., Wild West Motors, Inc. v. Lingle (1986), 224 Mont. 76, 728 P.2d 412, relied upon by the children and the court, which tracks the language of the pre-1989 statute, 72-20-107, MCA, as to how a trust is created. Whether those prior decisions simply apply across the board to cases decided under the present Trust Code is not addressed in the briefs; it does appear,

however, that the parties and the trial court assumed that to be true. We will not attempt to address these collateral matters in this opinion, leaving their analysis and resolution to some future case if specifically raised, argued and briefed. Rather, in the case at bar, we will address the first issue in the context of those legal principles which, we believe, have remained historically constant regardless of the changes in the statutory law over the time period in question.  In this regard, we also note that under the present Trust Code,  72-33-103, MCA, provides that "[e]xcept to the extent that the common law rules governing trusts are modified by statute, the common law as to trusts is the law of this state."

Taking this approach, it is clear that a trust is created only if the testator demonstrates that he or she intends that a trust be created.  This rule, followed in Wild West Motors, was set forth prior to 1989 at  72-20-107, MCA:

a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor indicating with reasonable certainty:  (1) an intention on the part of the trustor to create a trust; and (2) the subject, purpose and beneficiary of the trust.

Since 1989, under the Trust Code the law is that "[a] trust is created only if the trustor properly manifests an intention to create a trust."  Section 72-33-202, MCA. Moreover, in our case law, we continue to cite to the general rule that in the construction of trusts it is the trustor's intent that controls and that to determine that intent we look to the language of the trust agreement.  Hauseman v. Koski (1993), 259 Mont. 498, 501, 857 P.2d 715, 717 (citations omitted).  In that regard, our rules of construction with respect to testamentary instruments are well settled:

The words of the instrument are to receive an interpretation which will give some effect to every expression, rather than an interpretation which will render any of the expressions inoperative.  The will is to be construed according to the intentions of the testator, so far as is possible to ascertain them.  Words used in the instrument are to be taken in their ordinary and grammatical sense unless a clear intention to use them in another sense can be ascertained.  In cases of uncertainty arising upon the face of the will, the testator's intention is to be ascertained from the words of the instrument, taking into view the circumstances under which it was made, exclusive of his oral declarations.

* * * *

'The object, therefore, of a judicial interpretation of a will is to ascertain the intention of the testator, according to the meaning of the words he has used, deduced from a consideration of the whole instrument and a comparison of its various parts in the light of the situation and circumstances which surrounded the testator when the instrument was framed.'

In re Strode's Estate (1946), 118 Mont. 540, 545, 167 P.2d 579, 581-82 (quoting

Blacker
v. Thatcher (1944), 145 F.2d 255, 259, 158 A.L.R. 1, cert. denied 324 U.S. 848, 65 S.Ct. 686, 89 L.Ed. 1409). Accord In re Hume's Estate (1954), 128 Mont. 223, 226, 272 P.2d 999, 1000.

Furthermore, "[n]o particular form of words or conduct is necessary for the manifestation of intention to create a trust," Restatement (Second) of Trusts 24 (1959), and "words of trusteeship are not necessarily conclusive," George T. Bogert, Trusts 11 at 24 (6th ed. 1987). Nonetheless, we have held that "express trusts depend for their creation upon a clear and direct expression of intent by the trustor," Eckart v. Hubbard (1979), 184 Mont. 320, 325, 602 P.2d 988, 991, and that the burden of proof to establish the existence of a trust is upon the party who claims it and must be founded on evidence which is unmistakable, clear, satisfactory and convincing. First Natþl Bank v. Sant (1973), 161 Mont. 376, 386, 506 P.2d 835, 841 (citing Bender v. Bender (1965), 144 Mont. 470, 397 P.2d 957, and Platts v. Platts (1959), 134 Mont. 474, 334 P.2d 722). See also Bogert, supra 11 at 26 ([i]t is frequently stated by courts that the evidence to establish the existence of a trust must be "clear," "convincing," "explicit," and "unequivocal"), and Eckart, 602 P.2d at 991 (evidence must be "clear, convincing, and practically free from doubt").

Again, for purposes of this opinion, the parties having cited to no authority that would support a conclusion that the law would be different under the Trust Code, we will apply these foregoing legal principles. Therefore, we now turn to the language of the Fifth paragraph of Decedent's will:

I intentionally give all of my property and estate to my said father, H. A. Bolinger, in the event that he shall survive me, and in the event he shall not survive me, I intentionally give all of my property and estate to my step-mother, Marian Bolinger, in the event she shall survive me, and in that event, I intentionally give nothing to my three children, namely: Harry Albert Bolinger, IV, Wyetta Bolinger and Travis Bolinger, or to any children of any child who shall not survive me. I make this provision for the reason that I feel confident that any property which either my father or my step-mother, Marian Bolinger, receive from my estate will be used in the best interests of my said children as my said beneficiaries may determine in their exclusive discretion.

From this language it is clear that Decedent intended to accomplish several things under this paragraph of his will. First, he "intentionally" devised outright all of his property and estate to his father, and in default of that bequest, then to his step-mother, Marian. Second, it is also clear that Decedent "intentionally" devised nothing to his three

children. Third, Decedent desired to make some explanation as to why he disposed of his estate in the foregoing manner. To this end, he added to the otherwise unequivocal language of the first sentence of the Fifth paragraph, a second sentence with the explanation that he made this provision because he felt "confident" that any property which either his father or his step-mother, Marian, received from his estate would ["will"] be used in the best interests of his said children as Hal or Marian may determine in their exclusive discretion. It is the language in this second sentence which is at issue and which the District Court determined created an express trust in favor of the children.

The use of this latter sort of qualifying language in a will or instrument is referred to as "precatory" language. As stated in Bogert, supra  19 at 41:

Usually, if a transferor of property intends the transferee to be a trustee, he directs him to act in that capacity, but sometimes he merely expresses a wish or recommendation that the property given be used in whole or in part for the benefit of another. Words of this latter type are called "precatory" and are generally construed not to create a trust but instead to create at most an ethical obligation.

. . ..

In weighing the effect of precatory expressions the courts consider the entire document and the circumstances of the donor, his family, and other interested parties.

The author of this treatise notes that the primary question in construing precatory language is whether the testator meant merely to advise or influence the discretion of the devisee, or himself control or direct the disposition intended. Bogert, supra  19 at 42. Here, in Marian's favor, the author notes that "the settlor must have explicitly or impliedly expressed an intent to impose obligations on the trustee and not merely to give the donee of the property an option to use if for the benefit of another." Bogert, supra  19 at 42 (emphasis added). Put another way, considering the language of the entire instrument and the situation of the alleged settlor, his family, and the supposed beneficiaries at the time the will was executed, "was it natural and probable that the donor intended the donee to be bound by an enforceable obligation or was he to be free to use his judgment and discretion?" Bogert, supra  19 at 42 (emphasis added). Moreover, "[w]here a donor first makes an absolute gift of property, without restriction or limitation, and later inserts precatory language in a separate sentence or paragraph, the courts are apt to find that there was no intent to have a trust." Bogert, supra  19 at 43.

We have addressed the use of such language in a prior decision relied on by

Marian.  In Stapleton,  535 P.2d at 1268, the decedent's will provided as follows:

> I give, devise and bequeath to my beloved wife, Amanda DeVries, all the balance, residue and remainder of my property of whatever nature, kind or character which I may own at the time of my death to have and to hold as her sole and separate property.  I do this with the knowledge that she will be fair and equitable to all of my children, the issue of myself and my former wife as well as the issue of herself and myself.

When Amanda died leaving all her property to her children and nothing to the decedent's children by his first marriage, the latter sued claiming that a constructive trust was created by decedent's will in their favor.  Stapleton, 535 P.2d at 1268.  Reversing the trial court's summary judgment in the plaintiffs' favor, we ruled that the language was clear on its face-- Amanda was given decedent's property outright and the remaining precatory language did not create a trust for the benefit of the children by decedent's first marriage.  Stapleton, 535 P.2d at 1268.

Furthermore, in Stapleton, while rejecting as of "little value" cases cited by the parties and pointing out that precatory trust cases are fact driven, we relied on Miller v. Walker Bank & Trust Co. (1965), 17 Utah 2d 88, 404 P.2d 675, as being factually similar.  Stapleton, 535 P.2d at 1268-69.  In Miller, the precatory language at issue was:

> I give, devise and bequeath to my beloved wife, Nettie Knudsen Miller, all of my property, whether the same be real or personal or mixed, and I do this acknowledging all my children hereinafter named, and for the reason that I know that my beloved wife will care for my children from the remainder of my estate, if there be any, share alike . . ..

We quoted with approval the Utah court's conclusion that this precatory language did not create a constructive trust, specifically emphasizing that part of the court's decision that "[w]here there is a clear and unequivocal devise, the statement of the reasons for doing so does not limit or restrict the testamentary gift."  Stapleton, 535 P.2d at 1269.  We noted, further, that there was nothing in the Stapleton record to support any conclusion that the decedent intended to create a trust through the precatory language used.  Stapleton, 535 P.2d at 1269.

Similarly, in the case at bar, the language used by Decedent clearly and unambiguously makes an outright gift to his father, and in default of that gift, to his step-mother and specifically excludes his children. Then, in a separate sentence, Decedent explains the reason for this distribution, expressing his "confidence" that the devisees will use his estate for the children's "best interests" in the devisees' "exclusive

discretion."

This language does not impose any sort of clear directive or obligation (other than, perhaps, a moral or ethical one) on either Hal or Marian. The purported trustee is given no direction as to how the supposed settlor intends his estate to be used to further the "best interests" of the children and neither does Decedent provide any guidance as to what those best interests might include. Decedent imposes no restrictions on the purported trustee, but, rather, leaves in that person the "exclusive discretion" as to how the estate will be used for the children's best interests, expressing his "confidence" that will be accomplished. Decedent's statement of reasons for devising his estate to Hal and Marian, neither limits nor restricts the gift to them any more than did the language at issue in Stapleton and in Miller limit or restrict the bequests made in those cases. Stapleton, 535 P.2d at 1269. The bottom line is that, under the precatory language used by Decedent, his devisees had complete discretion as to how to use the property given them outright.

Furthermore, as in Stapleton, the facts found by the court and relied on by the children in the case at bar do not support the conclusion that Decedent intended that his expression of confidence in his father and step-mother would create a legally enforceable express trust. First, the trial court and the children focus on deposition testimony of Marian that she (initially at least) and Hal believed that the will created a trust. How Marian and Hal may have construed the language is not the issue, however. The real issue is what Decedent intended when he used the language which he did. Unfortunately, neither Marian's nor Hal's conclusory interpretation of the meaning of the language in the Fifth paragraph of the will assists in divining Decedent's intent one way or the other.

Second, while Marian believed that Decedent may have been concerned that his first wife would obtain control over his estate while the children were minors, her personal belief of what motivated Decedent is not evidence of what Decedent actually intended. Even Marian's testimony on this point was equivocal and speculative:

> Bud [Decedent] was flying around a good deal in those days because of his being an officer in the Pinsgauer [sic] Association, and I think he got worried about his kids. And by that time, his father had given him the 240 acres up south, and so he probably did not want Fae to have anything to do with it, is what my own personal feeling is. And he certainly made it clear. [Emphasis added.]

Third, as to Professor Folsom's affidavit, he first recites the entire Fifth paragraph

of Decedent's will.  He then analyzes various words and phrases in the paragraph as parts of speech and in the context of grammar and sentence structure.  Professor Folsom then reaches the conclusion that "[w]hen read in its entirety, the paragraph expresses the intention that the property must be used in the best interest of the children."  Regardless of whether Professor Folsom's affidavit was admissible or not on the issue of Decedent's intent, we conclude simply that, either on a stand-alone basis or in conjunction with Marian's deposition testimony, this affidavit does not provide substantial evidence, much less clear and convincing evidence, of Decedent's intent.  Without belaboring the point, nothing here suggests that Decedent chose his nouns, verbs and adverb prepositional phrases with the surgical precision that Professor Folsom concludes adds up to an expression of intention that the property "must" (Professor Folsom's word, not Decedent's) be used in the best interest of the children.  Arguably, had Decedent given the sort of considered thought to his choice of words that is suggested by the affidavit and had he clearly intended to create an express legal trust, it is more likely that he would not have used the sort of precatory language that he did.

Furthermore, we note that the Third paragraph of Decedent's will makes an unconditional, outright devise of all of Decedent's estate to Hal and that the Fourth paragraph of the will makes an unconditional, outright devise of the same property to Marian, should Hal die before Decedent.  Also, we note that the Sixth paragraph of the will appoints Hal as the personal representative with Marian as the alternate, both without bond, and gives both unrestricted power to sell any or all of the estate property without court order at public or private sale, with or without notice.  Again, Decedent's unequivocal, outright and unrestricted gifts to Hal and alternatively to Marian, and his appointment of them as the personal representative and alternate without bond and without restriction on their powers, supports the conclusion that the one precatory sentence in the Fifth paragraph was advisory only and was not intended to create a legal, express trust obligation.

While the children and the trial court rely upon Wild West Motors and In Re Marriage of Malquist (1988), 234 Mont. 419, 763 P.2d 1116, as generally describing the creation of a voluntary trust, neither case is particularly helpful in resolving the specific question of Decedent's intent and the construction of the language in his will at issue here.  In the former case the existence of a trust was admitted, Wild West Motors,

728

P.2d at 415, and in the latter case the issue was whether certain real property was included in an already existing trust, Malquist, 763 P.2d at 1117.

Furthermore, the children's and the court's citation to Powers, an 1894 New York case, is not persuasive. The case is cited for the proposition that the testator's expression of "confidence" that a bequest will be used to benefit another is sufficient to create a trust. We conclude that, while such an expression may be considered as part of the evidence of a testator's intention, in and of itself, the use of that word is not dispositive of this issue. Whether a trust will be found from the use of any precatory word or phrase, whether that be "desire," "wish," "hope," "recommend," "in confidence" or "rely," cannot be concluded merely from the particular word or phrase used. Bogert, supra 19 at 41-42. Importantly, and while other courts may interpret precatory language more liberally, our case law precedent is clear and we decline to depart from it on the facts here. Stapleton, 535 P.2d at 1268-69.

In short, we conclude that, reviewing Decedent's will as a whole, taking the words and phrases used by Decedent in their ordinary and grammatical sense and considering the facts found by the District Court, there was not the sort of "unmistakable," "clear," "convincing," "explicit," "unequivocal" and "practically free from doubt" evidence that would support a legal conclusion that Decedent clearly and directly expressed his intention to create an express trust in favor of the children through his use of precatory language in the Fifth paragraph of his will. Eckart, 602 P.2d at 991; First Natþl Bank, 506 P.2d at 841; Platts, 334 P.2d at 727; Stapleton, 535 P.2d at 1269.

Finally, as an aside, we note that both Stapleton and Miller addressed whether the precatory language at issue created a constructive trust, as opposed to the claim in the case at bar that the trust created was an express trust. Express trusts depend upon intention and implied trusts, i.e., constructive or resulting trusts, arise by operation of the law. Platts, 334 P.2d at 727. See also 72-33-201, -219 and -220, MCA. With regard to the latter trusts, intent may be presumed or implied or intent may not even be an issue. Eckart, 602 P.2d at 991. Nevertheless, for purposes of this opinion, we do not believe that this distinction as to the type of trust created is of particular importance, where the central issue--whether the testator's intent is manifest from the language used and the facts found--is the same and is governed by the same principles of law.

We hold that the District Court erred in its legal conclusion that the Fifth paragraph of Decedent's will created an express trust for the benefit of Decedent's three children. Accordingly, we reverse and remand for further proceedings consistent with

this opinion.
Reversed and remanded.


/S/   JAMES C. NELSON



We Concur:

/S/   J. A.   TURNAGE
/S/   KARLA M. GRAY
/S/   JIM REGNIER
/S/   TERRY N. TRIEWEILER


Justice W. William Leaphart, dissenting.

I dissent.

The majority, relying principally upon our decision in Stapleton v. DeVries (1975), 167 Mont. 108, 535 P.2d 1267, holds that the language used in the Bolinger will is only precatory. In Stapleton, the will provided as follows:

I give, devise and bequeath to my beloved wife, Amanda DeVries, all the balance, residue and remainder of my property of whatever nature, kind or character which I may own at the time of my death to have and to hold as her sole and separate property. I do this with the knowledge that she will be fair and equitable to all my children, the issue of myself and my former wife as well as the issue of herself and myself.

Stapleton, 535 P.2d at 1268.

In the present case, the Bolinger will provides:

I intentionally give all of my property and estate to my said father, H.A. Bolinger, in the event that he shall survive me, and in the event he shall not survive me, I intentionally give all of my property and estate to my step-mother, Marian Bolinger, in the event she shall survive me, and in that event, I intentionally give nothing to my three children, namely: Harry Albert Bolinger, IV, Wyetta Bolinger and Travis Bolinger, or to any children of any child who shall survive me. I make this provision for the reason that I feel confident that any property which either my father or my step-mother, Marian Bolinger, receive from my estate will be used in the best interests of my said children as my said beneficiaries may determine in their exclusive discretion.

The language used in the Bolinger will is distinguishable from and more conclusive than that used in Stapleton. In Stapleton, the decedent's will devised the property to the beneficiary "to hold as her sole and separate property." Such a "sole and separate property" provision is absent in the Bolinger will. Secondly, in Stapleton, the testator made the devise knowing that the beneficiary would be fair and equitable to all his

children (i.e. children from both marriages).  The beneficiary was thus under no obligation to segregate the devised property or to treat it any differently than her sole property.  In contrast, Bolinger provided that "any property" received from his estate was specifically tagged for use "in the best interests of [his] children."  In other words, his father or step-mother were not to commingle the property with their own property, nor were they to treat it as their sole and separate property with some vague understanding that they would then be fair and equitable to all concerned.  Rather, Bolinger was confident that this specific property "will be used in the best interests of my children."

The language in the Bolinger will is more than precatory, it is peremptory.  As the court recognizes, no particular form of words is necessary for the manifestation of an intent to create a trust, Restatement (Second) of Trusts  24, and express trusts depend upon a clear and direct expression of intent by the trustor.  Eckart v. Hubbard (1979), 184 Mont. 320, 325, 602 P.2d 988, 991.  Bolinger clearly intended that the property passing maintain its separate identity and that his father or step-mother, as trustees,  use the property solely for the benefit of his children, who were, at the time of the will, minors.

I would affirm the decision of the District Court.


/S/  W. WILLIAM LEAPHART


Justice William E. Hunt, Sr., joins in the foregoing dissent of Justice W. William Leaphart.


/S/  WILLIAM E. HUNT, SR.