DA 11-0157

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 308

IN RE: MARJORIE Q. WARD REVOCABLE
TRUST, dated January 2, 1992

JAMES G. WARD, Trustee of the Marjorie Q.
Ward Revocable Trust, dated January 2, 1992,

        Petitioner and Appellee,

  v.

JACK L. WARD,

        Respondent and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                  In and For the County of Yellowstone, Cause No. DV 10-605
                  Honorable G. Todd Baugh, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Bruce O. Bekkedahl; Patten, Peterman, Bekkedahl & Green, PLLC,
                Billings, Montana

        For Appellee:

                John T. Jones; Kathryn J. Bell; Brian O. Marty; Moulton Bellingham, PC,
                Billings, Montana

        For Intervenor:

                Andrew T. Billstein, Billstein Law Firm, PLLC, Billings, Montana

                            Submitted on Briefs:  October 5, 2011
                                      Decided:  December 7, 2011

Filed:

                             _____
                                          Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1 Jack L. Ward (Jack) appeals from an order of the Thirteenth Judicial District Court, Yellowstone County, reducing Jack's one-half share of the Marjorie Q. Ward Revocable Trust by $298,356.16. Jack appeals two issues, which we have restated as follows:

¶2 Issue One: Did the District Court comply with the requirements of M. R. Civ. P. 52(a) (2009) by orally stating its findings of fact and conclusions of law?

¶3 Issue Two: Did the District Court err in ordering that Jack's share of the Marjorie Q. Ward Revocable Trust be reduced by the amount he owed his stepsister, when that debt was previously discharged in bankruptcy proceedings?

¶4 We affirm.

## BACKGROUND

¶5 In 1989, Jack, acting individually and on behalf of JW Enterprises, Inc., executed a promissory note in favor of his stepsister Joan M. Camp (Joan) for the amount of $100,000, plus interest at a rate of ten percent per year until paid. Although the promissory note was due within six months, neither Jack nor JW Enterprises, Inc., ever made a single payment to Joan.

¶6 In 1992, Marjorie Q. Ward (Ms. Ward), Jack's mother and Joan's stepmother, executed a trust agreement, establishing the Marjorie Q. Ward Revocable Trust (Trust). Subject to certain smaller specific devises, including a $100,000 devise to Joan, the Trust provided that Trust residue be distributed in equal shares to Ms. Ward's two sons, Jack and James G. Ward (James).

2

¶7 Ms. Ward amended the Trust in 1998 to provide that before Jack would receive any distributions from the Trust, his share would be decreased, and Joan's increased, by the amount he owed Joan under the promissory note at the time of Ms. Ward's death. Specifically, Section 4(c)(iii) of the Trust provides:

> The residue of all trust income and principal, after the satisfaction of the specific bequests and devises above, shall at my death be distributed outright and free of trust to my sons, JACK L. WARD and JAMES G. WARD, in equal shares, if living. *Before any distribution is made to my son, JACK, however, my Trustee is directed to first reduce JACK's share by any amounts he owes to my stepdaughter, JOAN, at the time of my death.* JOAN must provide written documentation to my Trustee of the exact amount owed by JACK, including any accrued but unpaid interest. My Trustee is then directed to pay that amount over to JOAN outright and my Trustee may then distribute to JACK the balance of his share.

(Emphasis added.)

¶8 In 2005, Jack filed for Chapter 7 bankruptcy and received a discharge of his debt. Ms. Ward died on March 3, 2009. On that date, Jack owed Joan principal and interest under the promissory note totaling $298,356.16. Joan confirmed this amount to her stepbrother James, who is the Trustee of the Trust. In April 2010, the Trustee filed a petition in the District Court to determine the appropriate distributions under the Trust. Ruling from the bench, the District Court concluded Jack's share should be reduced by the amount he owed Joan on the date of Ms. Ward's death—$298,356.16.

¶9 Jack appeals.

### STANDARD OF REVIEW

¶10 The interpretation of a trust agreement is a question of law that this Court reviews for correctness. *In re Bair Family Trust*, 2008 MT 144, ¶ 32, 343 Mont. 138, 183 P.3d

3

## DISCUSSION

¶11    *Issue One: Did the District Court comply with the requirements of M. R. Civ. P. 52(a) (2009) by orally stating its findings of fact and conclusions of law?*

¶12    As an initial matter, we must address Jack's argument that this Court has to remand this matter because additional findings are required under M. R. Civ. P. 52(a), since the District Court's written order does not contain specific findings of fact or conclusions of law.

¶13    M. R. Civ. P. 52(a) (2009)[1] requires that "[i]n all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon . . . ."  The requirement that a district court set forth the essential and determining facts upon which its conclusions rest aids not only a district court's process of adjudication, but also this Court's appellate review.  *In re Marriage of Lawrence*, 2005 MT 125, ¶ 15, 327 Mont. 209, 112 P.3d 1036.  Rule 52(a) is met when the District Court orally states it findings of fact and conclusions of law on the record.  M. R. Civ. P. 52(a) (2009).  Where the record does not contain sufficient findings of fact to support the underlying decision, this Court cannot conduct a meaningful review on appeal and must remand the matter to the district court to make additional findings.  *In re Marriage of Banka*, 2009 MT 33, ¶¶ 9-10, 349 Mont. 193, 201 P.3d 830.

---

[1] All references herein to M. R. Civ. P. 52 are to the 2009 version, which was in effect during the time period relevant to this case.

¶14 We agree with Jack that the District Court's *written* order does not contain specific findings of fact or conclusions of law. However, our review of the record leaves us convinced that the District Court's *oral* findings of fact and conclusions of law are sufficient to satisfy the requirements of Rule 52(a) and to afford this Court the opportunity to conduct a meaningful review. Accordingly, we turn our discussion to Issue Two.

¶15 *Issue Two: Did the District Court err in ordering that Jack's share of the Marjorie Q. Ward Revocable Trust be reduced by the amount he owed his stepsister, when that debt was previously discharged in bankruptcy proceedings?*

¶16 In construing the terms of a trust, the trustor's intent is the controlling consideration. *In re Estate of Bolinger*, 284 Mont. 114, 120-21, 943 P.2d 981, 985 (1997). Both parties agree the Trust is clear: Ms. Ward intended both of her sons to share the Trust residue equally; however, if Jack owed money to Joan at the time of Ms. Ward's death, then Jack's share would be reduced by that amount. This dispute, then, centers upon whether Jack owed Joan money at the time of Ms. Ward's death.

¶17 Jack argues he did not owe Joan any money at the time of Ms. Ward's death because any debt he owed to Joan was discharged in bankruptcy four years before Ms. Ward passed away. Jack relies upon a portion of the bankruptcy code, 11 U.S.C. § 524(a)(2) (2006), which provides in relevant part:

(a) A discharge in a case under this title [11 USCS §§ 101 et seq.] —

. . .

5

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived.

Jack claims the bankruptcy statute is clear that his debt to Joan is discharged and, thus, if no liability exists under the bankruptcy code, there can be no amount owing under the Trust. Jack further argues 11 U.S.C. § 524(a)(2) prohibits Joan from pursuing any effort to collect on the debt and, similarly, enjoins the Trustee's efforts to distribute Trust residue to Joan.

¶18     The District Court ordered that Joan be paid the money Jack owed her on the basis that Ms. Ward's intent controlled over any bankruptcy provision. We agree. The injunction provided for by 11 U.S.C. § 524(a)(2) does not prevent a trustor from distributing trust property as he or she deems appropriate. *See In re Estate of Watson*, 965 P.2d 409, 412 (Okla. Civ. App. 1998) ("A testator is free to fashion bequests based upon previous gifts or loans[] and is free to reduce bequests in the amount of such loans, whether they are enforceable[] or unenforceable via discharge in bankruptcy or barred by limitations."). Thus, a court "may determine the indebtedness of a distributee and order a deduction of the debt from his [or her] share even though an action to recover the debt might be barred by a discharge in bankruptcy." *Estate of Watson*, 965 P.2d at 412.

¶19     Previously, in *Estate of Firebaugh*, this Court similarly affirmed that a devisee's debt may be appropriately offset against his or her share of the estate, despite a prior discharge of the debt in bankruptcy. *In re Estate of Firebaugh*, 271 Mont. 418, 422, 897 P.2d 1088, 1091 (1995). There, Kenneth Firebaugh was indebted to his mother Winifred.

6

Kenneth filed for bankruptcy and received a discharge of his debt. However, Winifred's will provided that Kenneth's debt, if it exceeded the amount of her other son's debt, should be offset in order to treat her sons equally. *Estate of Firebaugh*, 271 Mont. at 419-20, 897 P.2d at 1089-90. On appeal, Kenneth argued his share should not be offset by any debt because his debt was previously discharged in bankruptcy. *Estate of Firebaugh*, 271 Mont. at 421, 897 P.2d at 1090. This Court concluded Kenneth's share should be offset by debts he owed his mother because to ignore the debt would thwart Winifred's clear intent, as reflected in her will, that her sons be treated equally. *Estate of Firebaugh*, 271 Mont. at 421-22, 897 P.2d at 1090.

¶20 Further, to accept Jack's interpretation of the word "owes" would defy this Court's rules of interpretation and would improperly impose a technical, legal definition upon the Trust terms, contradicting the clear intent expressed by Ms. Ward. It is well accepted that this Court looks to the language of the trust and interprets the "[w]ords used in the instrument . . . in their ordinary and grammatical sense unless a clear intention to use them in another sense can be ascertained." *Estate of Bolinger*, 284 Mont. at 121, 943 P.2d at 985 (internal quotations omitted). Jack's interpretation of the word "owes" violates this principle, as it defies the word's ordinary and grammatical use, improperly injects technical bankruptcy principles, and defeats Ms. Ward's intent that Joan be paid.

¶21 The District Court did not err in reducing Jack's share pursuant to Ms. Ward's instructions contained in the Trust. The plain language of the Trust controls, and the bankruptcy provisions upon which Jack relies are inapplicable.

7

**CONCLUSION**

¶22    For the foregoing reasons, we affirm.


/S/ MICHAEL E WHEAT


We Concur:

/S/ PATRICIA COTTER
/S/ BRIAN MORRIS
/S/ JIM RICE



Justice James C. Nelson, dissenting.

¶23    For the same reasons I did in *In re Estate of Firebaugh*, 271 Mont. 418, 423-24,
897 P.2d 1088, 1091-92 (1995) (Nelson & Gray, JJ., specially concurring and dissenting),
I dissent from the Court's Opinion in the case at bar.

¶24    In pertinent part, Marjorie Ward's trust provides:

> Before any distribution is made to my son, JACK, however, my Trustee is
> directed to first reduce JACK's share *by any amounts he owes to my
> stepdaughter JOAN, at the time of my death.*  [Emphasis added.]

The simple truth is that, "at the time of [Ms. Ward's] death," Jack did not *owe* "any
amounts" of money to Joan.  The very debt that Ms. Ward was referring to in the trust
document had been fully discharged in United States Bankruptcy Court pursuant to
11 U.S.C. § 524(a)(2) (2006), which is set out in full at ¶ 17 of the Opinion.  Jack did not
*owe* that debt to Joan at the time Ms. Ward died.

¶25 Pursuant to the plain and unambiguous language of the Trust quoted above, it is irrefutable that because Jack did not *owe* Joan any money at the time of Ms. Ward's death, her trustee was—and in my view is—without any legal authority to deduct the amount of the discharged, and thus nonexistent, debt from Jack's share of the trust before distributing Jack's entitlement to him. What the trustee is doing blatantly violates federal bankruptcy laws inasmuch as the trustee is refusing to honor the discharge order.

¶26 If, *after* Jack's discharge in bankruptcy, Ms. Ward had determined to give Joan out of her estate a sum of money equal to what Jack had owed her stepdaughter *prior* to the discharge, then this would be a different case. But that did not happen here. Ms. Ward did not change the language of the Trust. And it is undisputed that, at the time of Ms. Ward's death, and by virtue of the order of the United States Bankruptcy Court, "any amounts [JACK] owes to my stepdaughter JOAN" simply did not exist. Jack had no legal obligation whatsoever to repay Joan the money he had borrowed from her. His debt to her had been discharged in bankruptcy. He did not "owe" Joan anything.

¶27 When interpreting a trust, Montana courts "must look to the language of the trust agreement itself to ascertain [the trustor's] intent." *Cate-Schweyen v. Cate*, 2000 MT 345, ¶ 21, 303 Mont. 232, 15 P.3d 467 (citing *In re Estate of Bolinger*, 284 Mont. 114, 120-22, 943 P.2d 981, 985 (1997)). Here, Ms. Ward's intent was clear: If, *at the time of my death*, Jack *owes* Joan the money he had borrowed from her, then the trustee is to offset Jack's debt against his share of the trust, with the offset paid to Joan. If Ms. Ward had wanted to give Joan a post-discharge gift, she could have. For that matter, Ms. Ward could have given Joan a pre-discharge gift equal to the amount of money Jack owed his

stepsister. The fact of the matter is, however, that Ms. Ward did neither. And the Court's present attempt to achieve what it considers to be a more equitable result not only replaces Ms. Ward's stated intent with its own, but, worse, reads out of Ms. Ward's trust the plain language she used and replaces that language with words of the Court's own choosing. It is neither this Court's job nor its prerogative to rewrite the unambiguous language of trusts and wills, even if the terms of the trust or will might seem inequitable to one of the parties. *Cf. In re Estate of Lucile B. Snyder*, 2009 MT 291, 352 Mont. 264, 217 P.3d 1027.

¶28 As Jack correctly argues, 11 U.S.C. § 524(a)(2) operates as an injunction against the commencement or continuation of any attempt to recover or offset the debt he at one time owed to Joan. This means that judgment creditors—here, the trustee on behalf of Joan—are prohibited "from taking any action against debtors to collect the discharged debts." *In re Clowney*, 19 B.R. 349, 353 (Bankr. M.D.N.C. 1982) (holding that the plaintiff's liability to the defendant was absolved as a result of the bankruptcy order and the defendants were barred from collecting debts from property of the plaintiffs). The granting of a discharge releases the debtor from personal liability on the discharged debt. *See Assocs. Fin. Servs. Corp. v. Cowen*, 29 B.R. 888, 895 (Bankr. S.D. Ohio 1983) ("[A] discharged debt which was not properly reaffirmed is not cognizable as 'debt' in a subsequent proceeding without either a novation of the prior obligation or the creation of an entirely new debt."). Thus, 11 U.S.C. § 524(a)(2) effectively and legally bars the trustee from paying over trust money, to which Jack is legally entitled, to another— Joan—who is not legally entitled to receive it.

10

¶29 The bankruptcy discharge is designed to provide broad comprehensive relief to the debtor and to assure the debtor a "fresh start." *Clowney*, 19 B.R. at 353; *accord In re Holzapfel*, 2011 MT 257, ¶ 11, 362 Mont. 251, 262 P.3d 1114 (Wheat & Nelson, JJ., dissenting) ("People who are forced to file for bankruptcy are entitled to a fresh start."). "This fresh start provides the debtor with a 'new opportunity in life and clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " *Clowney*, 19 B.R. at 353 (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S. Ct. 695, 699 (1934)). This "fresh start" is assured. *Clowney*, 19 B.R. at 353.

¶30 Finally, it is not clear what authority the Court relies on for the proposition that it need not give full faith and credit to the discharge order entered by the United States Bankruptcy Court and may instead do by way of "equity" what federal bankruptcy laws specifically prohibit. Indeed, were I the trustee in this matter, I would not be in a big hurry to pay more than a quarter of a million dollars to Joan, without first having the federal court put its own imprimatur on this Court's decision.

¶31 I dissent.

/S/ JAMES C. NELSON

11