JUSTICE NELSON,
dissenting.
¶23 For the same reasons I did in In re Estate of Firebaugh, 271 Mont. 418, 423-24, 897 P.2d 1088, 1091-92 (1995) (Nelson & Gray, JJ., specially concurring and dissenting), I dissent from the Court’s Opinion in the case at bar.
¶24 In pertinent part, Marjorie Ward’s trust provides:
Before any distribution is made to my son, JACK, however, my Trustee is directed to first reduce JACK’S share by any amounts he owes to my stepdaughter JOAN, at the time of my death. [Emphasis added.]
The simple truth is that, “at the time of [Ms. Ward’s] death,” Jack did not owe “any amounts” of money to Joan. The very debt that Ms. Ward was referring to in the trust document had been fully discharged in United States Bankruptcy Court pursuant to 11 U.S.C. § 524(a)(2) (2006), which is set out in full at ¶ 17 of the Opinion. Jack did not owe that debt to Joan at the time Ms. Ward died.
¶25 Pursuant to the plain and unambiguous language of the Trust quoted above, it is irrefutable that because Jack did not owe Joan any money at the time of Ms. Ward’s death, her trustee was-and in my view is-without any legal authority to deduct the amount of the discharged, and thus nonexistent, debt from Jack’s share of the trust before distributing Jack’s entitlement to him. Whatthe trustee is doing blatantly violates federal bankruptcy laws inasmuch as the trustee is refusing to honor the discharge order.
¶26 If, after Jack’s discharge in bankruptcy, Ms. Ward had determined to give Joan out of her estate a sum of money equal to what Jack had owed her stepdaughter prior to the discharge, then this would be a different case. But that did not happen here. Ms. Ward did not change the language of the Trust. And it is undisputed that, at the time of *78 Ms. Ward’s death, and by virtue of the order of the United States Bankruptcy Court, “any amounts [JACK] owes to my stepdaughter JOAN” simply did not exist. Jack had no legal obligation whatsoever to repay Joan the money he had borrowed from her. His debt to her had been discharged in bankruptcy. He did not “owe” Joan anything. ¶27 When interpreting a trust, Montana courts “must look to the language of the trust agreement itself to ascertain [the trustor’s] intent.” Cate-Schweyen v. Cate, 2000 MT 345, ¶ 21, 303 Mont. 232, 15 P.3d 467 (citing In re Estate of Bolinger, 284 Mont. 114, 120-22, 943 P.2d 981, 985 (1997)). Here, Ms. Ward’s intent was clear: If,ai the time of my death, Jack owes Joan the money he had borrowed from her, then the trustee is to offset Jack’s debt against his share of the trust, with the offset paid to Joan. If Ms. Ward had wanted to give Joan a post-discharge gift, she could have. For that matter, Ms. Ward could have given Joan a pre-discharge gift equal to the amount of money Jack owed his stepsister. The fact of the matter is, however, that Ms. Ward did neither. And the Court’s present attempt to achieve what it considers to be a more equitable result not only replaces Ms. Ward’s stated intent with its own, but, worse, reads out of Ms. Ward’s trust the plain language she used and replaces that language with words of the Court’s own choosing. It is neither this Court’s job nor its prerogative to rewrite the unambiguous language of trusts and wills, even if the terms of the trust or will might seem inequitable to one of the parties. Cf. In re Estate of Lucile B. Snyder, 2009 MT 291, 352 Mont. 264, 217 P.3d 1027.
¶28 As Jack correctly argues, 11 U.S.C. § 524(a)(2) operates as an injunction against the commencement or continuation of any attempt to recover or offset the debt he at one time owed to Joan. This means that judgment creditors-here, the trustee on behalf of Joan-are prohibited ‘from taking any action against debtors to collect the discharged debts.” In re Clowney, 19 B.R. 349, 353 (Bankr. M.D.N.C. 1982) (holding that the plaintiffs liability to the defendant was absolved as a result of the bankruptcy order and the defendants were barred from collecting debts from property of the plaintiffs). The granting of a discharge releases the debtor from personal liability on the discharged debt. See Assocs. Fin. Servs. Corp. v. Cowen, 29 B.R. 888, 895 (Bankr. S.D. Ohio 1983) OtA] discharged debt which was not properly reaffirmed is not cognizable as ‘debt’ in a subsequent proceeding without either a novation of the prior obligation or the creation of an entirely new debt.”). Thus, 11 U.S.C. § 524(a)(2) effectively and legally bars the trustee from paying over trust money, *79 to which Jack is legally entitled, to another-Joan-who is not legally entitled to receive it.
¶29 The bankruptcy discharge is designed to provide broad comprehensive relief to the debtor and to assure the debtor a ‘fresh start.” Clowney, 19 B.R. at 353; accord In re Holzapfel, 2011 MT 257, ¶ 11, 362 Mont. 251, 262 P.3d 1114 (Wheat & Nelson, JJ., dissenting) (‘People who are forced to file for bankruptcy are entitled to a fresh start.”). ‘This fresh start provides the debtor with a ‘new opportunity in life and clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.’ ”Clowney, 19 B.R. at 353 (quoting Local Loan Co. v. Hunt, 292 U.S. 234, 244, 54 S. Ct. 695, 699 (1934)). This ‘fresh start” is assured. Clowney, 19 B.R. at 353.
¶30 Finally, it is not clear what authority the Court relies on for the proposition that it need not give full faith and credit to the discharge order entered by the United States Bankruptcy Court and may instead do by way of “equity” what federal bankruptcy laws specifically prohibit. Indeed, were I the trustee in this matter, I would not be in a big hurry to pay more than a quarter of a million dollars to Joan, without first having the federal court put its own imprimatur on this Court’s decision.
¶31 I dissent.